**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 1, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DEBRA MARTINEZ,

      Plaintiff-Appellant,

v.

TARGET CORPORATION,

      Defendant-Appellee.

No. 09-2112
(D.C. No. 1:07-CV-00295-JEC-WDS)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY, PORFILIO,** and **O'BRIEN**, Circuit Judges.

Debra Martinez appeals from four orders entered by the district court, including a summary judgment in favor of Target Corporation on her claim of age discrimination. *See*, 29 U.S.C. §§ 621-634.  We affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.

Martinez began working for Target in 1990 at a store in Albuquerque, New Mexico, where she held several positions, the last being Reverse Receiving Specialist. She typically worked Monday through Friday from 7:30 or 8:00 a.m. until 4:00 or 4:30 p.m. She reported to a Backroom Team Leader, who in turn reported to an Executive Team Leader (ETL) in Logistics. The last ETL-Logistics for whom Martinez worked was Danette White. At all times relevant to this case, Robert Keith was the ETL-Human Resources and Brian Fairhurst was the Store Team Leader (STL), who supervised all of the store's ETLs.

On December 10, 2004, Martinez took a one-month leave of absence to adopt her sister's three children. She returned to her position on January 10, 2005, but on April 8, 2005, took another leave to care for those children. She was originally scheduled to return in June 2005, but obtained an extension until August 2005. She asked Keith if she could receive accrued vacation pay during her second leave. Keith told her she would have to return to work for one day in order to do that, so she returned from leave, worked one night shift on the sales floor, and then resumed her leave. Keith granted all of Martinez's leave requests, at least some of which were pursuant to the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654.

The parties agree Martinez was scheduled to work evenings on the sales floor beginning August 17, 2005, after she returned from her second leave. Otherwise there is little agreement on the facts.

According to Martinez, just prior to August 17, she checked her posted work schedule and noticed she was scheduled to work evenings and weekends. She told Keith she could not work evenings because she had to care for her children. She claims she told Keith she could work mornings but had to be home when her children returned from school. Keith told her he would take her off the schedule.

Target claims Martinez told the Human Resources Clerical Assistant, Delilah Medina, that she could only work evenings. Medina prepared and posted the work schedule taking into account Martinez's preferred hours. After reviewing the schedule, Martinez told Keith she could only work between 10:00 a.m. and 2:00 or 3:00 p.m, when her children were in school. Keith responded there were no positions with such limited hours but he would talk to STL Fairhurst. Fairhurst thought Martinez might be able to work some cashiering shifts, but the limitation on her availability precluded her from returning to her position as Reverse Receiving Specialist. Martinez remained scheduled for the evening shifts.

Target had a no-show/no-call policy–failure to show up for three consecutive shifts without calling constituted voluntary job abandonment.

Indisputably, Martinez did not show up for any of her scheduled night shifts.

Accordingly, Keith initiated termination paperwork and Martinez was informed of her discharge in a letter she received on August 23, 2005. She was 48 years old at the time and thus within the ambit of the ADEA, which protects "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Keith later consulted with Fairhurst and modified Martinez's paperwork to show she was unable to return from leave, which rendered her eligible for rehire. After Martinez's employment was terminated, Elizabeth Dunlap, who had filled Martinez's position during her leaves of absence, continued in the role of Reverse Receiving Specialist. Dunlap is older than Martinez–she was born in 1954; Martinez was born in 1957.

After Martinez was denied unemployment benefits,[1] she filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC). She claimed the earliest date discrimination occurred was August 16, 2005, and the latest date was August 23, 2005. She described the particulars of her charge, in full, as follows:

> I was employed with the above employer for 15 years. I held the position of Receiving Specialist.
>
> On 8/16/05, I returned to work after being out on FMLA. Upon my return to check my schedule, I was placed on the night shift. I

---

[1] At a hearing on her application for unemployment benefits, Martinez and Keith offered sharply conflicting stories. As the hearing judge commented during Keith's testimony, matters were "about as clear as mud." Aplt. App., Vol. II at 478:22-23.

> discussed this with my personnel manager, and he indicated that he would try to have it changed. This never happened.
>
> On 8/23/05, I received a letter from Human Resources that I was terminated.
>
> No valid reason was given for my termination.
>
> I believe I was discriminated against because of my age, in violation of the Age Discrimination in Employment Act.

Aplt. App., Vol. I at 33. In an EEOC questionnaire, she stated: "I was fired while I was trying to get back to work from Medical Family Leave." *Id.* at 85. In response, Target claimed Martinez returned to work in June 2005; she told Keith she could work only between 10:00 a.m. and 2:00 p.m.; she missed several shifts; and eventually she resigned because of the conflict between work and her new family.

The EEOC issued Martinez a right-to-sue letter and she brought this action raising individual and class claims of age discrimination alleging unlawful termination and demotion. She filed in the United States District Court for the Western District of Oklahoma, attempting to join a collective action pending in that district, but was not permitted to do so. The Oklahoma court transferred her case to the United States District Court for the District of New Mexico.

Target filed a motion to dismiss Martinez's demotion and class claims, which the court granted. Martinez filed a motion to amend her complaint to include claims for violation of the FMLA, which was denied. Target then filed a

motion for summary judgment on Martinez's remaining claim. In opposition, Martinez submitted two expert reports which she had not previously disclosed. Target moved to strike the expert reports, which the court granted. Finally, the court entered summary judgment in favor of Target. Martinez challenges each of these orders in this appeal.

## II.

### A. Dismissal of Martinez's ADEA Demotion and Class Claims

The district court granted Target's motion to dismiss Martinez's ADEA demotion and class claims, concluding it lacked jurisdiction over those claims because Martinez did not raise them before the EEOC. Martinez concedes she raised only an individual discharge claim in the charge she filed with the EEOC but contends administrative exhaustion is not a jurisdictional prerequisite to suit, relying on *Jones v. Bock*, 549 U.S. 199 (2007), and *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392 (1982). She also contends her EEOC charge should be "liberally construed" to include demotion and class claims. (Appellant's Opening Br. at 22.) We review a district court's dismissal for lack of jurisdiction de novo. *Merida-Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

The law in this Circuit is clear–"a plaintiff's exhaustion of . . . administrative remedies is a jurisdictional prerequisite to suit under the ADEA." *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). In *Zipes*, the Supreme Court held a timely filing before the EEOC was not

jurisdictionally required to maintain suit in the district court. 455 U.S. at 393. In *Jones v. Runyon*, we noted several circuits have read *Zipes* to mean an EEOC filing is not a jurisdictional requirement to suit but rather "should be viewed merely in the nature of a condition precedent or an affirmative defense that can be waived if not asserted by the defendant." 91 F.3d 1398, 1399 n.1 (10th Cir. 1996). We have not taken this approach. Even after *Zipes*, we have distinguished between the timely filing of a charge with the EEOC, which is not jurisdictional, and the failure to file such a charge at all, which is jurisdictional. *See id.* Here, Martinez did not file an untimely charge raising her demotion and class claims; rather, she failed to file such a charge *at all*.[2]

Martinez also contends her EEOC charge should be "liberally construed" to include demotion and class claims. (Appellant's Opening Br. at 22.) While we generally construe charges of discrimination liberally, "our inquiry is limited to the scope of the administrative investigation that can reasonably be expected to

---

[2] Martinez argues a different result is warranted by *Jones v. Bock.* We disagree. In *Bock*, the Supreme Court held the exhaustion requirement of the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), was not a pleading requirement but instead an affirmative defense. 549 U.S. at 216. In explaining its holding, the Court noted the PLRA does not list failure to exhaust in its enumeration of the authorized grounds for dismissal. *Id.* at 214. Moreover, claims covered by the PLRA are typically brought under 42 U.S.C. § 1983, which does not require exhaustion at all. *Id.* at 212. Martinez is not proceeding under the PLRA; *Bock* is inapposite. She does not point us to a single decision–of this or any other court–applying *Bock* in the context of a Title VII or ADEA case. In any event, Target raised her failure to make demotion and class claims to the EEOC as a defense.

follow from the discriminatory acts alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory or retaliatory actions underlying each claim . . . ." *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). In her EEOC charge, Martinez said she "believe[d] she was discriminated against because of [her] age, in violation of the Age Discrimination in Employment Act." Aplt. App., Vol. I at 33. She was complaining about losing her job and did not allege she was demoted; nor did she say she was bringing a claim on behalf of other employees. One cannot reasonably expect the EEOC would investigate such charges based on this filing (and, indeed, it did not).

Martinez nonetheless argues the filing requirements were satisfied because both the EEOC and Target were aware of the nature and scope of the allegations in the Oklahoma collective action. She argues: "As long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the filing requirements are satisfied . . . ." *Thiessen v. Gen. Electric Capital Corp.*, 267 F.3d 1095, 1110 (10th Cir. 2001) (quotations omitted).

*Thiessen* is inapposite. In *Thiessen*, we considered whether eight individuals who did not file an administrative charge with the EEOC should have been allowed to opt-in to a suit filed by a similarly situated plaintiff–a situation known as "piggybacking"–even though they did not suffer adverse employment actions in the 300-day period prior to the filing of the similarly situated plaintiff's EEOC charge. *See id.* We noted: "The policy behind the single filing rule is that

it would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC." *Id.* (quotations omitted). Martinez does not claim she should be allowed to "piggyback" on a properly-filed charge; rather, she argues the charge she filed, liberally construed, was sufficient. As the district court correctly held, it was not.

It is well established that "each discrete [discriminatory] action constitutes its own unlawful practice for which administrative remedies must be exhausted." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1238 (10th Cir. 2004) (quotations omitted). Martinez did not allege facts supporting a demotion or a class claim in her EEOC charge. It would be unfair (and contrary to the ADEA) to require Target to defend against charges that were not, but perhaps could have been, raised. "[W]e have previously recognized[] the purposes of exhaustion are: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." *Jones*, 502 F.3d at 1185 (quotations omitted). Those purposes were not satisfied here and we will not construe Martinez's charge to include claims she failed to raise. Thus, the court properly granted Target's motion to dismiss her demotion and class claims.

**B. Denial of Martinez's Motion for Leave to Amend**

The district court denied Martinez's motion for leave to amend her complaint to add claims under the FMLA because Martinez failed to file her motion prior to the pleading-amendment deadline, even though she had obtained a

two-month extension of that deadline. It concluded Martinez did not meet the standard for amendment set forth in Fed. R. Civ. P. 15(a)(2)[3] or Fed. R. Civ. P. 16(b)(4).[4] We review the denial of leave to amend for an abuse of discretion. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).

Under Rule 15(a)(2), "denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay."[5] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quotation omitted). The district court did not abuse its discretion in rejecting as insufficient Martinez's explanation for failing to file a timely motion to amend her complaint. As it noted, as early as June 13, 2007, Martinez had indicated she intended to amend her complaint to include FMLA claims. She obtained an extension of the original pleadings-amendment deadline for this very purpose, but neither filed a motion to amend before the expiration of the deadline nor sought a second extension. She argued she did not file a timely motion because she believed her FMLA claims

---

[3] Rule 15(a)(2) states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

[4] Rule 16(b)(4) states: "A schedule may be modified only for good cause and with the judge's consent."

[5] We need not address Target's argument that Rule 16(b)(4)'s "good cause" standard applies in this case because Martinez cannot satisfy the more lenient standard of Rule 15(a)(2).

would be premature under Fed. R. Civ. P. 11[6] and *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007).  The court rejected this argument, finding Martinez "simply neglected to [timely] file her claims."  Aplt. App., Vol. I at 705. Assuming, *arguendo*, her excuse was adequate the failure to timely notify the court and opposing counsel of her intentions remains unexplained.  We perceive no abuse of discretion.

## C.  Exclusion of Martinez's Expert Reports

In opposition to Target's motion for summary judgment, Martinez submitted excerpts from two expert reports.  The reports were prepared for the Oklahoma collective action Martinez tried, but failed, to join.  Target moved to strike the reports on the grounds that (1) Martinez had not disclosed them in accordance with Fed. R. Civ. P. 26(a)(2)(B); and (2) the reports were inadmissible under Fed. R. Evid. 702.  In response, Martinez filed a motion for leave to designate the experts along with full copies of their reports.[7]  The court granted

---

[6]     Rule 11(b)(3) states, in pertinent part: "By presenting the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, are reasonably based on belief or a lack of information."

[7]     Generally, the experts opined Target's emphasis on marketing to young customers, conveyed in part through repeated emphasis on the mottos "Target Brand," "Fast, Fun, Friendly," and "Speed is Life," resulted in pressure to reduce the number of older employees and led to age discrimination.

Target's motion to strike and denied Martinez's motion to designate the experts under Fed. R. Civ. P. 37(c)(1), which states, in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

We review a district court's decision to strike evidence under Rule 37(c)(1) for abuse of discretion. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). In deciding whether a party's violation of the expert disclosure requirements of Rule 26(a) is justified or harmless, we consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[8] *Id.* The court has "broad discretion" to determine whether to allow the late designation of experts and "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.*

The court did not abuse its discretion in striking Martinez's expert reports. It noted Martinez did not submit the reports until nine months after the deadline

---

[8]    Martinez urges us to consider "the importance of the excluded testimony," which is a factor considered by the Fifth Circuit. *See, e.g., EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993). We decline to do so. In any event, it is surprising she failed to seek an extension of the expert disclosure deadline if she viewed the expert testimony as critical to her case.

for expert disclosure had passed, seven weeks after discovery had closed, and only *after* Target had filed its motion for summary judgment. Martinez argued Target was on notice of the reports because they had been filed in the Oklahoma action. The court found no precedent for the proposition that the timely disclosure of expert reports in a different case could satisfy the deadline requirements established in the present case.[9] The court found the late disclosure prejudiced Target, as discovery would have to be reopened and summary judgment briefing completed anew if the court permitted the late reports. And the court pointed to Martinez's wholesale failure to explain why she did not seek an extension of the expert-disclosure deadline if, as she argued, she had an extremely difficult time locating experts she considered critical to her case.

On these facts, the court did not abuse its discretion in striking Martinez's expert reports. Though she claims she had trouble locating an affordable expert, this does not excuse her failure to comply with the court's deadline or request an extension of that deadline. Had she needed, for financial reasons, to rely on reports in the Oklahoma class action, she should have been candid with the court and opposing counsel and her candor should have been timely, thereby giving others an opportunity to be heard on the issue. Sometimes it is more convenient to seek forgiveness than ask permission, but such strategy is a risky one.

---

[9]     It could, however, be relevant on the question of prejudice to Target, but not, as we explain, in this case.

**D. Grant of Summary Judgment to Target**

Summary judgment was entered in favor of Target on Martinez's discharge, a claimed violation of the ADEA. "We review a district court's grant of summary judgment de novo, using the same standards applied by the district court." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

It is unlawful under the ADEA "for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff alleging discrimination may prove her case by direct or circumstantial evidence. Direct evidence is evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee's protected status." *Sanders v. Southwestern Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008) (citations omitted), *cert. denied*, 130 S. Ct. 69 (2009).

Martinez argued two comments, one by White, the ETL-Logistics to whom she indirectly reported, and one by STL Fairhurst, were direct evidence of discrimination. Martinez testified at her deposition that White had once told her she was "old and falling apart." Aplt. App., Vol. I at 246. Another employee told Martinez she had overhead Fairhurst say he was going to clean out the "old crew"

-14-

of the store manager who had preceded him, which Martinez interpreted to mean employees over the age of 40. *Id.* at 251. The court concluded these comments were not direct evidence of discrimination because neither White nor Fairhurst was involved in the termination decision. *See Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir. 1995). In addition, Fairhurst's remark was only discriminatory if it referred to employees over 40 rather than all employees who had worked under the prior manager. "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007) (quotation omitted).

We agree with the district court. Martinez argues White could have had a role in the termination decision because she worked at the same store as Martinez up until Martinez was terminated. This is irrelevant. Regardless of when White left, Martinez introduced no evidence from which one could reasonably infer that White had anything to do with the decision to terminate her employment. At most, White was involved in the decision to put Dunlap in the role of Reverse Receiving Specialist until Martinez returned from leave, which does not evidence a role in the decision to terminate Martinez's employment under Target's no-show/no-call policy.[10]

---

[10] Martinez also claims White: (1) gave her lower (but still satisfactory) evaluations in 2003 and 2004; (2) often refused to let her take a break until she
(continued...)

As to Fairhurst, we agree with the district court that his alleged comment about cleaning out the "old crew" does not constitute direct evidence of discrimination. We also agree Fairhurst did not play a role in Keith's decision to initiate Martinez's termination paperwork. The record indicates only that he spoke with Keith about accommodating Martinez's schedule requests and about changing the paperwork to show Martinez voluntarily resigned so she would be eligible for rehire. Fairhurst did not testify Martinez's discharge required his approval; he specifically testified Keith could discharge an employee under the no-call/no-show policy without his approval. Fairly regarded, Martinez did not present sufficient evidence of direct discrimination to survive a motion for summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). But that does not end the matter.

Where a plaintiff does not have direct evidence of discrimination, she can establish her claim through circumstantial evidence. *See Sanders*, 544 F.3d at 1105. "In that instance, we analyze the plaintiff's claims under the *McDonnell*

---

[10](...continued)
had worked for five or six hours; and (3) periodically scheduled her for fewer hours. These allegations do not imply she had a role in the decision to discharge Martinez for failure to report for duty.

-16-

*Douglas* framework to determine whether the defendant is entitled to summary judgment." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell Douglas* framework, a plaintiff has the burden to establish a prima facie case of discrimination. If she meets that burden, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for its action. 411 U.S. at 802. If the employer meets its burden, the plaintiff has the burden to show the employer's reason is pretextual. *Id.* at 804.

In order to make out a prima facie case of wrongful discharge under the ADEA, a plaintiff must show: (1) she is within the protected age group; (2) was doing satisfactory work; (3) was discharged; and (4) was replaced by someone younger. *See Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). The district court determined Martinez did not establish the fourth element of her claim because she did not show her replacement, Elizabeth Dunlap, was younger. Martinez claims Target produced no evidence of Dunlap's age, but Fairhurst provided a declaration stating Dunlap was born in 1954 (three years before Martinez). Martinez testified she thought Dunlap was in her thirties but was "not sure." Aplt. App., Vol. I at 250. It was Martinez's burden to establish Dunlap was younger, not Target's; she failed to do so.

The court also considered Martinez's prima facie case under an alternative analysis in which the fourth element is flexible. *See Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (noting a plaintiff does not always need to establish

-17-

all the elements of a prima facie case because "[t]he critical prima facie inquiry . . . is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination") (quotations omitted)).  We have said this more flexible test "may occasionally be helpful when addressing discrimination claims that either do not fall into any of the traditional categories (e.g., hiring or discharge) or present unusual circumstances."  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 n.5 (10th Cir. 2000).[11] **[should be fn 6]**

Martinez's wrongful-discharge claim is a traditional one that presents no unusual circumstances.  She contends she was fired because Target wanted its workforce to become *younger*, yet she was replaced by someone *older*.  Thus, there is a logical connection between the fourth element of the prima facie case and the inference that Target discharged her because of her age.  The traditional four-element prima facie case, therefore, provides more "structure and guidance,"**[should be fn 6]** *Kendrick*, 220 F.3d 1227 n.5 ("[O]rdinarily, more structure and guidance can be found in the traditional four prongs of the . . . prima facie test.").  Accordingly, Martinez's failure to show she was replaced by

---

[11]    As the Supreme Court noted in *McDonnell Douglas*, the precise formulation of the prima facie proof required of a plaintiff may vary with the facts of each case.  *See* 411 U.S. at 802 n.13.

someone younger is fatal to her claim and she is not entitled to a burden-shifting presumption of age discrimination under *McDonnell Douglas*.[12]

## III.

The judgment of the district court is AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge

---

[12] Even if we concluded Martinez established a prima facie case and advanced to the second and third steps of the *McDonnell Douglas* burden-shifting analysis, we would affirm for substantially the same reasons as the district court, which undertook this analysis.