TACHA, Circuit Judge.
Plaintiffs-Appellants Jamie Sanders, Denise Coffey, and Karie Brooks appeal the district court’s entry of summary judgment in favor of Defendant-Appellee Southwestern Bell Telephone, L.P. (“SWBT”) on their claims of age and sex discrimination. They also appeal the court’s dismissal of co-defendant South *1103 western Bell Communications (“SBC”) for improper service. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM in part and REVERSE in part.
I. BACKGROUND
SWBT experienced a significant loss in customers after September 11, 2001. As a result, SWBT’s Oklahoma Construction and Engineering (“C & E”) organization underwent three separate reductions in force (“RIFs”) of first-level managers. The RIFs were conducted in the fall of 2001, spring of 2002, and fall of 2002. The plaintiffs survived the first two RIFs but not the third, which is the only RIF at issue in this appeal.
Dan McNeely headed the Oklahoma C & E organization during the fall 2002 RIF. First-level managers in the Oklahoma C & E organization reported to their Area Managers, who in turn reported to Mr. McNeely. In the fall of 2002, SWBT determined that the Oklahoma C & E organization had twenty-two first-level managers and one Area Manager more than business needs required. The plaintiffs do not dispute the business necessity of the resulting RIF.
SWBT’s Management Staffing Guidelines (“MSG”) set forth procedures for conducting RIFs. As part of the fall 2002 RIF, and in accordance with the MSG, all first-level managers in the Oklahoma C & E organization were first grouped by job title and work location. Mr. McNeely, with input from the Area Managers, then determined the geographic areas where a smaller number of managers could handle the existing workload. The groups with surplus workers, or “affected work groups,” included Managers-Engineering in the Oklahoma City/Stillwater area, Managers-Construction in the Oklahoma City/Stillwater area, and Managers-Engineering in the Enid area.
To determine which managers would be selected for the RIF, and consistent with the MSG, managers in each affected work group were placed into one of four “bands” — Bands A, B, C, and D — based on their most recent performance evaluations. Band A was the highest; Band D was the lowest. No manager within any affected work group, however, fell into Band D.
Next, five Area Managers ranked all Band C managers in each affected work group against one another. Those managers who ranked lower than the number of managers designated for retention in the affected work group were considered to be “at risk” for a layoff, or “surplus.” The highest-ranked at-risk manager, however, could be “saved” from being laid off if a higher-ranked manager in her affected work group either voluntarily quit or accepted a job in a non-affected work group, or a different organization within the company.
As a Manager-Engineering in the Oklahoma City/Stillwater area, Ms. Sanders fell into an affected work group. She was placed into Band C based on her 2001 performance evaluation. Sixteen other people in this affected work group were also placed into Band C. The five Area Managers ranked Ms. Sanders fifth from the bottom. Because only four managers were designated as surplus, Ms. Sanders was not considered to be at risk at that time. Later, however, and pursuant to the MSG, one Area Manager accepted a voluntary demotion to Manager-Engineering. This demotion necessitated the layoff of an additional manager from this affected work group, which caused Ms. Sanders to be at risk for surplus.[1]
*1104 Ms. Coffey’s position was in the affected work group consisting of Managers-Construction in the Oklahoma City/Stillwater area. Her most recent performance evaluation placed her in Band C. The Area Managers ranked Ms. Coffey last out of the six people in Band C, which put her at risk of being surplussed.[2]
Ms. Brooks was one of two people in the affected work group consisting of Managers-Engineering in the Enid area. She was placed in Band C; the other manager, a younger man, was placed in Band B. Because it had previously been determined that one person in this work group would be laid off, Ms. Brooks was considered at risk.
On November 13, 2002, Ms. Sanders and Ms. Brooks met individually with their supervisor, Area Manager Rick Wooten. Ms. Coffey met with her supervisor, Area Manager Mike Harris. The supervisors informed the plaintiffs that their positions were being eliminated or consolidated with another position, and gave them the option of either terminating their employment immediately or staying on for thirty days to apply for other positions within the company. According to Ms. Sanders, Mr. Wooten told her during this meeting that she was being surplussed because of her age.
Ms. Sanders ultimately accepted another position with SWBT in Plano, Texas. Ms. Coffey and Ms. Brooks were unable to locate another position and were laid off in December 2002. Ms. Sanders was forty-eight years old, Ms. Coffey was forty-five, and Ms. Brooks was fifty-six.
The plaintiffs filed suit against SWBT and SBC, alleging that they were surplussed because of their age in violation of the Age Discrimination in Employment Act (“ADEA”), 29 U.S.C. §§ 621-634, and because of their sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. After discovery, SWBT and SBC moved for summary judgment. Before ruling on the motion, the district court sua sponte dismissed SBC for insufficient service of process. The court then granted summary judgment in favor of SWBT, reasoning that the plaintiffs had failed to demonstrate that SWBT’s nondiscriminatory justification for their layoffs was pretextual. The plaintiffs appeal the order of summary judgment and the dismissal of SBC.[3]
II. SUMMARY JUDGMENT
A. Standard of Review
We review summary judgment decisions de novo, applying the same legal standard as the district court. Simms v. Okla. ex rel. Dep’t of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.1999). Summary judgment is appropriate if there is no genuine issue as to any *1105 material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). “When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.” Simms, 165 F.3d at 1326.
B. Proof of Discrimination
A plaintiff alleging discrimination may prove her case by direct or circumstantial evidence. See Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir.2000). Direct evidence is evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee’s protected status. See Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1117 (10th Cir.2007) (“Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption.”) (quotations omitted). For example, we have stated that an employer’s policy, discriminatory on its face, is direct evidence of discrimination. See Ramsey v. City and County of Denver, 907 F.2d 1004, 1007-08 (10th Cir.1990).
Usually, however, a plaintiff will not have direct evidence of discrimination and will establish her claims through circumstantial evidence. In that instance, we analyze the plaintiffs claims under the McDonnell Douglas framework to determine whether the defendant is entitled to summary judgment. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Adamson v. Multi Community Diversified Servs., Inc., 514 F.3d 1136, 1145-46, 1148 (10th Cir.2008) (applying McDonnell Douglas to discrimination claims brought pursuant to the ADEA and Title VII)- Under the McDonnell Douglas analysis, a plaintiff “bears the initial burden of setting forth a prima facie case of discrimination.” Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir.1998). After the plaintiff makes a prima facie case, the burden shifts to the employer to give a legitimate, nondiscriminatory reason for its employment decision. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997). “If the employer comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer’s proffered reason for the challenged action is pretextual— i.e., unworthy of belief.” Id. (quotations omitted). A plaintiff who demonstrates pretext gets “over the hurdle of summary judgment.” Id.
1.
Ms. Sanders has produced direct evidence that she was surplussed because of her age. She testified that Mr. Wooten, who had been part of the team responsible for ranking her fifth from the bottom among Band C managers in her affected work group, told her that her age — not her job performance — was the cause of her surplus.
It is undisputed that when Mr. Wooten informed Ms. Sanders that her job was being eliminated, he provided her with a document that listed, by job title and age, the number of employees selected for layoff and the number who were being retained. This information is required to be given to employees by the Older Workers Benefit Protection Act, which is part of the ADEA. According to Ms. Sanders, however, and contrary to the purpose of the ADEA paperwork, Mr. Wooten pointed to the document, explained that she was being surplussed because of her age, and stated that this was necessary to prevent age discrimination.
Although SWBT has put forth evidence that calls Ms. Sanders’s recollection of events into question, it is not our province at the summary judgment stage to weigh *1106 the evidence or make credibility determinations. Utah L’house Ministry v. Found. for Apologetic Info. & Rsch., 527 F.3d 1045, 1050 (10th Cir.2008). If the jury believes Ms. Sanders’s testimony, it could conclude — directly, without the aid of any favorable inferences- — -that the reason for her surplus was her age. Accordingly, SWBT is not entitled to summary judgment on Ms. Sanders’s age-discrimination claim.[4]
2.
The plaintiffs’ remaining claims are supported by circumstantial evidence and therefore must be analyzed under McDonnell Douglas. As to these claims, we agree with the district court that the plaintiffs have established prima facie cases of both sex discrimination and age discrimination.[5] We also agree with the district court that SWBT has articulated a legitimate, non-discriminatory reason for the plaintiffs’ surplus: the RIF. The central issue in this appeal, then, is whether the plaintiffs have provided evidence of pretext. We conclude they have not.
Generally, “[a] plaintiff demonstrates pretext by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.” Jaramillo v. Colo. Judicial Dep’t, 427 F.3d 1303, 1308 (10th Cir.2005) (quotations omitted). When the employer’s proffered reason for its action is a RIF, evidence tending to show that the RIF is merely a pretext for the plaintiffs surplus may take several forms. First, the evidence may demonstrate that the plaintiffs surplus is inconsistent with the RIF criteria articulated by her employer. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1168 (10th Cir.1998); see also Sanchez v. Philip Morris Inc., 992 F.2d 244, 247 (10th Cir.1993) (“It is conceivable that a plaintiff ... could be so overwhelmingly better qualified than another applicant that on this evidence alone a trial court could properly find pretext”); Beaird, 145 F.3d at 1169 (citing Sanchez for the proposition that “[t]here may be circumstances in which a claimed business judgment is so idiosyncratic or questionable that a factfinder could reasonably find that it is pretext for illegal discrimination.”). Relatedly, evidence showing that the employer inconsistently applied its RIF criteria may also support a finding that the plaintiff was terminated for discriminatory reasons. See Beaird, 145 F.3d at 1173-74. Other procedural irregularities in the RIF process may simi *1107 larly evince unlawful discrimination. See Whittington v. Nordam Group Inc., 429 F.3d 986, 994 (10th Cir.2005). This, of course, is not an exhaustive list of the types of evidence that may support a finding of pretext, and we do not limit a plaintiff to any particular method of proof. Rather, when assessing whether a plaintiff has demonstrated pretext such that a jury could conclude that discrimination was the true reason for the adverse employment action, we consider the evidence as a whole. See Danville v. Reg’l Lab Corp., 292 F.3d 1246, 1250 (10th Cir.2002).
We understand the plaintiffs in this case — either individually or together — to argue that the RIF was only a pretext for unlawful discrimination because: (1) their qualifications did not warrant their placement in Band C; (2) SWBT inconsistently applied its ranking criteria; (3) an Area Manager was permitted to take a voluntary demotion that resulted in Ms. Sanders’s job loss; and (4) women and older employees were disproportionately affected by the RIF.

Band Placement

Ms. Sanders and Ms. Brooks contend that SWBT was not justified in placing them in Band C based on their performance and qualifications relative to employees who were placed in higher bands. It is undisputed, however, that SWBT determined band placement based on an employee’s most recent performance evaluation; that a notation on the performance evaluation from the employee’s manager stating that the manager “eoneur[s] with [the employee’s] accomplishments as written or the achievements as documented” was viewed by the Area Managers as demonstrating average performance warranting placement in Band C; and that the performance evaluations of Ms. Sanders and Ms. Brooks contained this notation. Unlike the evaluations of managers who were placed in Band A or Band B, neither of these plaintiffs’ evaluations included comments from their supervisors indicating their performance was “superior” or “above average as compared to his/her peers.” To the extent these plaintiffs contend that they are more qualified or for other reasons should have been placed in a higher band, we have held that “[i]t is the manager’s perception of the employee’s performance that is relevant, not plaintiffs subjective evaluation of his own relative performance,” Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir.1996), and that a plaintiff “cannot defeat summary judgment by claiming that she would have been retained if different RIF criteria had been used.” Beaird, 145 F.3d at 1169. Thus, the plaintiffs’ claims on this point are not sufficient to demonstrate pretext.
Because this is Mrs. Brooks’s only argument on pretext, we affirm the district court’s entry of summary judgment on both her age and sex discrimination claims. Further, because Ms. Coffey was the youngest person in the construction group’s Band C, and because there is no evidence that her band placement was determined by her age, we affirm the district court’s entry of summary judgment on her age discrimination claim.[6] Thus, the only *1108 remaining claims are Ms. Sanders’s and Ms. Coffey’s sex discrimination claims.

Inconsistent Application of RIF Criteria

Ms. Sanders argues that the Area Managers did not consider RIF criteria uniformly when they were determining employees’ rankings within Band C of her affected work group. We have stated that the selective use of RIF criteria — to evaluate some employees’ potential but not others’, for example — “constitutes limited evidence of pretext.” Beaird, 145 F.3d at 1174. The record, however, does not support Ms. Sanders’s assertion.
SWBT policy, as articulated by the MSG, is to rank employees subject to the RIF (in this case, those falling into Band C) according to their “performance, skills, experience, and training.” In addition, Mr. McNeely circulated a guide to his Area Managers that listed subsets of the MSG categories. For “skills,” the guide listed “management skills,” “technical skills,” “supervisory skills,” “effectiveness with others,” “ability to handle a broader scope,” and “promotional possibility.” Id. Mr. McNeely also stated in his affidavit that the skills category included consideration of skills “above and beyond those required for the job.” Similarly, Area Manager Mike Harris testified that “skills would be the things that you had that made you capable of doing your job, [including] any cross-experience that you might have.” As to the MSG’s other two ranking categories, Mr. McNeely’s memo stated that the “experience” category encompasses “NCS” and “equivalent work experience.” The “training” category includes “formal company training” and “formal technical or trade school.”
On September 26, 2002, the Area Managers held a meeting and ranked all of the Band C employees in affected work groups. Their ranking decisions were unanimous. Because there is no contemporaneous document detailing the reasons for each employee’s particular ranking, Mr. Wooten — one of the Area Managers who participated in the ranking meeting— provided an affidavit in this case that explained why each employee was ranked higher or lower than Ms. Sanders.
For example, the first-ranked employee in Band C in Ms. Sanders’s affected work group “had been in his engineering position longer than Ms. Sanders, and his skill level was considered to be greater than Ms. Sanders.” The second-ranked employee “had construction experience and was considered to be more versatile than Ms. Sanders.” The sixth-ranked employee *1109 “had been promoted ... from his cable splicing technician job. Even though he had not been an engineer as long as Ms. Sanders, he was able to learn his job very quickly due to his outside technical background. His skills were considered to be greater than Ms. Sanders.” These explanations are consistent with SWBT’s RIF policy, as outlined in both the MSG and the guide provided by Mr. McNeely.
Ms. Sanders appears to argue, however, that SWBT did not apply its RIF criteria consistently and uniformly across all of its employees. As evidence, she points out that she had been in an engineering position for more time than at least one person ranked ahead of her in Band C. She thus concludes that SWBT did not consider her tenure when ranking her against that employee.
There is, however, no evidence to suggest that SWBT failed to consider her tenure. According to Mr. Wooten’s affidavit, she was ranked lower than the other employee because he “had an outside construction background and prior supervisory experience.... His outside construction background enabled him to independently complete jobs. Ms. Sanders was not as autonomous.” Although Ms. Sanders may have been in an engineering position longer than the other employee, an employee’s tenure as an engineer was only one of many possible ranking criteria in the MSG categories of “performance, skills, experience, and training.”
We therefore do not agree with Ms. Sanders’s position. The descriptors used in Mr. Wooten’s affidavit are entirely consistent with the criteria set forth in Mr. McNeely’s ranking instructions. This fact distinguishes the present case from Beaird because SWBT’s ranking method did not deviate from its stated policy. See Beaird, 145 F.3d at 1173-74.
Moreover, Mr. Wooten’s affidavit is not evidence that SWBT inconsistently applied the RIF criteria. His affidavit’s purpose is merely to illustrate why a specific employee was ranked higher than Ms. Sanders, not to provide a comprehensive list of all the ranking criteria assessed by SWBT’s Area Managers. That the affidavit is selective in its detail is no indication that the RIF was similarly selective. Again, this fact distinguishes this case from Beaird. See id. (explaining that selective use of RIF criteria in identifying employees to be laid off is evidence of pretext).

Voluntary Demotion of an Area Manager

Ms. Sanders also takes issue with the voluntary demotion of Rick Griffith from an Area Manager to a Manager-Engineer. We do not consider this to be evidence of pretext.
The Area Managers, including Mr. Griffith, knew that SWBT would be retaining only thirteen of the seventeen Band C Managers-Engineering in the Oklahoma City/Stillwater area. At the Area Managers’ ranking meeting in September, the managers unanimously ranked Ms. Sanders thirteenth. Thus, at that time, she was considered “safe” from the RIF. After the ranking meeting, SWBT enacted a policy whereby an Area Manager who is subject to a RIF may take a voluntary demotion to an engineer position rather than risk being laid off. Also at this time, the Area Managers who had ranked the engineers knew that one of them (the Area Managers) would be laid off pursuant to the fall 2002 RIF. As the most junior Area Manager, Mr. Griffith considered himself to be the most likely candidate to lose his job, so he volunteered to be demoted to a Manager-Engineering. This demotion necessitated the surplus of an additional engineer from the group. Ms. Sanders, as *1110 the next-lowest ranked engineer, was selected to be surplussed.
Although Ms. Sanders contends that Mr. Griffith “basically was able to pick who was going to be surplussed as a result of his stepping down,” we find nothing about his decision or the enactment of the policy itself that is indicative of pretext. Because the voluntary-demotion policy was not enacted until after the ranking meeting, at the time Mr. Griffith ranked Ms. Sanders he thought she would be retained. Further, there is no evidence that suggests Mr. Griffith took a demotion because he wanted Ms. Sanders, as a woman, to be surplussed. Therefore, his transfer into Ms. Sanders’s engineering group does not call into question the nondiscriminatory purpose of the RIF as asserted by SWBT.

Statistical Evidence

There were 102 first-level managers in the Oklahoma C & E group prior to the fall 2002 RIF. Nineteen were women and eighty-three were men. Ten of the nineteen women, or 52%, were surplussed. Eleven of the eighty-three men, or 13%, were surplussed. Ms. Sanders and Ms. Coffey suggest that sex discrimination can be inferred because a greater percentage of women were selected for the RIF.
“Statistics taken in isolation are generally not probative of age discrimination.” Doan v. Seagate Tech., Inc., 82 F.3d 974, 979 (10th Cir.1996) (quotations omitted). Specifically, “[statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext.” See id. Thus, “[statistical evidence that does not adjust for the various performance evaluations and departmental rankings of the employees included in the statistical pool” is insufficient to establish pretext. See Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1197-98 (10th Cir.2006).
The district court correctly noted that the plaintiffs’ statistical evidence does not take into consideration nondiscriminatory explanations for the disparity — for example, differences in various individuals’ job performance, experience, and training. Because the statistics fail to account for these variables, they do not constitute evidence of pretext. See id. (in RIF case, statistical evidence that fourteen of nineteen terminated employees were over forty years old is not evidence of pretext because the statistics do not account for individuals’ skills or prior performance); see also Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir.1994) (“Plaintiffs statistical evidence compares only the ages of employees retained with the ages of those laid off.... Plaintiffs statistical evidence fails to eliminate nondiscriminatory explanations for disparate treatment — i.e., that those laid off had lower performance evaluations and rankings than those retained — and therefore does not permit an inference of pretext.”); Furr v. Seagate Tech., Inc., 82 F.3d 980, 987 (10th Cir.1996) (not permitting an inference of pretext where “[plaintiffs’ statistics grouped all employees together regardless of specialty or skill and failed to take into account nondiscriminatory reasons for the numerical disparities.”).
III. DISMISSAL OF SBC
A plaintiff must serve a defendant with a summons and a copy of the complaint within 120 days after the filing of the complaint. Fed.R.Civ.P. 4(m). If service is not made within 120 days, the court: *1111 Id. We review for abuse of discretion the district court’s dismissal of a defendant for improper service. See Scott v. Hern, 216 F.3d 897, 912 (10th Cir.2000).
*1110 on motion or on its own after notice to the plaintiff[,] must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.
*1111 Here, the district court sua sponte dismissed SBC for insufficient service of process and was therefore required to give prior notice to the plaintiff under Rule 4(m).[7] Among other things, the notice requirement affords the plaintiff the opportunity to show good cause for improper service. See Espinoza v. United States, 52 F.3d 838, 841 (10th Cir.1995) (“The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service.”). “If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted.” Id. Indeed, a court must expressly consider a plaintiffs argument regarding good cause, because “[without anything in the record to indicate how the district court made its determination with respect to the good cause exception ... appellate review is impossible.” ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1459 (10th Cir.1995).
In this case the district court did not notify the plaintiffs of its intention to dismiss SBC for improper service. In its order of dismissal, the district court also concluded, without explanation, that the plaintiffs had not served SBC and had not shown good cause regarding their failure to do so. Because the district court did not give the plaintiffs an opportunity to argue that they did, in fact, serve SBC or that they had good cause not to, the district court abused its discretion in sua sponte dismissing SBC.
IV. CONCLUSION
We REVERSE the entry of summary judgment in favor of SWBT on Ms. Sanders’s age discrimination claim. Because none of the plaintiffs have demonstrated that SWBT’s RIF was a pretext for sex discrimination, we AFFIRM the district court’s entry of summary judgment in favor of SWBT on those claims. We similarly AFFIRM the summary judgment order as to Ms. Coffey’s and Ms. Brooks’s age discrimination claims. Finally, we REVERSE the district court’s sua sponte dismissal of SBC as a defendant and REMAND for further proceedings not inconsistent with this opinion.

. At the time of the ranking meeting, the seventeen managers in Band C ranged in age from forty-two to fifty-five. Ms. Sanders was forty-eight. She was younger than each person ranked below her, and she was younger than half of the people ranked above her. *1104 Indeed, the top-four-ranked individuals were all older than Ms. Sanders. Of the seventeen total managers, five (including Ms. Sanders) were women. Two women were ranked above Ms. Sanders; two were ranked below her. Thus, all but two of the men were ranked above Ms. Sanders.

. At the time of the ranking meeting, the six managers in Band C ranged in age from forty-five to fifty-five. Ms. Coffey was the youngest, and she was the only woman.

. The plaintiffs' complaint asserts several additional claims, all of which were either dismissed under Fed.R.Civ.P. 12(b)(6) or decided in favor of SWBT in the district court’s summary judgment order. The plaintiffs have explicitly abandoned most of those claims on appeal. The two claims which the plaintiffs have not explicitly abandoned — a common-law tort claim, see Burk v. K-Mart Corp., 770 P.2d 24 (Okla.1989), and Ms. Coffey’s sex-discrimination claim based on equal pay — are waived due to inadequate briefing on appeal. See Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 841 (10th Cir.2005).

. The district court concluded that "[g]iven the different versions of this conversation between Wooten and Sanders, this evidence is at most circumstantial.” The court then analyzed Ms. Sanders’s age-discrimination claim under the McDonnell Douglas framework and held that Ms. Sanders had not met her burden to show that SWBT’s reason for surplussing her was pretextual. Because Mr. Wooten’s alleged statement is direct — not circumstantial — evidence of age discrimination, the district court erred in analyzing her claim under McDonnell Douglas.

. All three plaintiffs are women. All received performance evaluations rating them as "average” and praising specific efforts each had made. All three were surplussed, causing them to leave an affected work group in which SWBT retained at least one male manager. The three plaintiffs thus have established a prima facie case of discrimination based on sex. See Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir.1998). As to Ms. Coffey's and Ms. Brooks's age discrimination claims, because both plaintiffs are also over the age of forty and left affected work groups in which a significantly younger manager was retained, they have similarly established a prima facie case of age discrimination. Id.

. Ms. Coffey contends that her job title (and resulting function) was different from other job titles included in her affected work group. Although not acknowledged by Ms. Coffey, we have stated that pretext may be shown by evidence that the employer designed a RIF to impact certain protected employees — which may be the case when an employer limits the RIF to certain groups of employees without articulating a rational justification for those categorizations. See Beaird, 145 F.3d at 1170-71. If that were the case here, the fact that Ms. Coffey was the youngest employee in Band C would not be sufficient to entitle SWBT to summary judgment on her claim of age discrimination. But Ms. Coffey has not put forth any evidence that SWBT did not consider her job to be equivalent to others it *1108 included in the affected work group of Managers-Construction in the Oklahoma City/Stillwater area. It is undisputed that under the MSG, corporate managers determine the parameters of an affected work group based on job title, similar job functions, geography, lines of organization, or other definable attribute, based on the needs of the business. SWBT determined that Construction-Engineers and Construction-Contract Coordinators would be pooled together to form an affected work group. Ms. Coffey does not present any evidence (indeed, she did not depose anyone concerning the decision to make this grouping) that calls this business judgment into question. Nor does she suggest that the effect or purpose of this particular grouping was to subject older employees to the RIF. Rather, Ms. Coffey herself contends that SWBT should not have made this grouping simply because, according to her, her job as a Contract Coordinator is different than that of an Engineer. SWBT, however, is not precluded from grouping different jobs together, so long as it deems them sufficiently similar in some type of way that would make it appropriate, based on the needs of the business, to do so. In short, Ms. Coffey’s personal belief does not call into question the propriety of SWBT’s decision. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1171 (10th Cir.1998) ("Appellants may believe that [a corporation's] job coding should be by job qualification, not function performed, but it is not our place to disturb that kind of business judgment.").

. The court's order indicates that SBC had moved for dismissal. In fact, SBC had not done so. Rather, SWBT had stated in footnotes to several of its filings that "SBC Communications, Inc. has not yet been served.... SBC Communications, Inc. [was not] the Plaintiffs' employer. Plaintiffs’ employer was SWBT.”