The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 3, 2018

## 2018COA66

**No. 18CA0018, *Curry v. Zag Built LLC* — Civil Procedure — Process — Time Limit for Service; Construction Law — Construction Defect Action Reform Act — Notice of Claim Process**

A division of the court of appeals interprets and applies (1) C.R.C.P. 4(m), concerning what happens when a plaintiff does not serve process on a defendant within sixty-three days of when the complaint was filed; and (2) section 13-20-803.5(9), C.R.S. 2017, of the Construction Defect Action Reform Act, which stays a filed case until the plaintiff satisfies the Act's notice-of-claim procedure.

The division concludes that C.R.C.P. 4(m) does not require a trial court to dismiss a case if plaintiffs do not serve defendants within sixty-three days of when the plaintiff filed a complaint. Instead, if the court is contemplating dismissing the case within that sixty-three day period, it must provide the plaintiff with notice

that it is contemplating dismissing the case and give the plaintiff an opportunity to show good cause why the court should not dismiss the case. If the plaintiff shows good cause, the court must extend the deadline. But, if the plaintiff does not show good cause, the court has the discretion to (1) dismiss the case without prejudice; or (2) order that the plaintiff serve the defendant within a specified time.

The division also concludes that the Construction Defect Action Reform Act does not require a plaintiff to complete the notice-of-claim procedure in section 13-20-803.5 before filing the claim. The division determines, instead, that section 13-20-803.5(9) of the Act contemplates the situation in which the plaintiff may file a claim in court before sending a notice of claim to prospective defendants. Finally, the division concludes that, for the purpose of section 13-20-803.5(9), a case generally commences when the plaintiff files the complaints in court.

Court of Appeals No. 18CA0018
Mesa County District Court No. 15CV30428
Honorable Gretchen B. Larson, Judge

Brock Curry and Lora Curry,

Plaintiffs-Appellees,

v.

Zag Built LLC and Mike Zagrzebski,

Defendants-Appellants.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERNARD
Berger and Freyre, JJ., concur

Announced May 3, 2018

Hall & Evans, L.L.C., Todd H. Fleckenstein, Matthew J. Hegarty, Michael A. Paul, Denver, Colorado, for Plaintiffs-Appellees

Wegener, Scarborough, Younge & Hockensmith, LLP, Benjamin M. Wegener, Grand Junction, Colorado, for Defendants-Appellants

¶ 1     This appeal presents us with two inquiries.

¶ 2     The first inquiry requires us to figure out how we should apply C.R.C.P. 4(m), which has only been in effect for about five years. It states as follows:

> If a defendant is not served within 63 days (nine weeks) after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--shall dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

*Id.*

¶ 3     Does this Rule automatically require a trial court to dismiss a case if a plaintiff does not serve a defendant within sixty-three days of when the plaintiff filed the complaint and the plaintiff has not shown good cause to explain the lack of service? We answer this question "no." Instead, applying the plain language of Rule 4(m), we conclude that a court has two options if a plaintiff has not served a defendant and the plaintiff has not explained the lack of service by demonstrating good cause: the court may dismiss the case without prejudice or it may order that the plaintiff serve the defendant within a specified time.

¶ 4     The second inquiry involves the Construction Defect Action Reform Act, sections 13-20-801 to -808, C.R.S. 2017.  (When we discuss this statute generally, we will simply refer to it as the Act.) Section 13-20-805, C.R.S. 2017, concerns tolling of statutes of limitation and states as follows:

> If a notice of claim is sent to a construction professional in accordance with section 13-20-803.5 within the time prescribed for the filing of an action under any applicable statute of limitations or repose, then the statute of limitations or repose is tolled until sixty days after the completion of the notice of claim process described in section 13-20-803.5

¶ 5     Section 13-20-803.5, C.R.S. 2017, describes the notice-of-claim process.  Does section 805 mean that a plaintiff has to complete the notice-of-claim process described in subsection 803.5 before filing a claim?  We answer this question "no."  In section 13-20-803.5(9), the Act contemplates the situation in which a plaintiff may file a claim in court before sending a notice of claim to a prospective defendant.  Subsection 803.5(9) states that "[a]ny action commenced by a claimant who fails to comply with the requirements of this section shall be stayed, which stay shall

2

remain in effect until the claimant has complied with the requirements of this section."

¶ 6     When does a case commence for the purposes of subsection 803.5(9)? We conclude that a case generally commences when a plaintiff files its complaints in court.

¶ 7     Beginning the narrative of this case, these two inquiries arose in a lawsuit that involved the Act. In 2013, defendants Zag Built LLC and its owner, Mike Zagrzebski, to whom we will refer collectively as Zag Built, built a house for Brock Curry and Lora Curry, to whom we will refer as the Currys. Shortly after the Currys moved into the house in July 2013, they started noticing signs of damage, such as cracks in the drywall and "racked," or sagging, doors. They filed a complaint, which named Zag Built and some others as defendants and which cited the Act, in late June 2015. (The other defendants are not parties to this appeal.)

¶ 8     Zag Built submits that (1) the Currys' claim accrued, at the latest, in early January 2014; (2) section 13-80-104(1)(a), C.R.S. 2017, states that claims under the Act are subject to the statute of limitations found in section 13-80-102, C.R.S. 2017; and (3) under section 13-80-102, the appropriate statute of limitations for this

case was, therefore, two years. We will assume, for the purposes of our discussion, that the Currys' claim accrued in early January 2014.

¶ 9 Late June 2015 is obviously within the two-year window of the pertinent statute of limitations. So what is the problem, according to Zag Built? Zag Built submits that the Currys' filing of a complaint in late June 2015 was a nullity because the Currys did not serve Zag Built with process within sixty-three days of late June 2015. According to Zag Built, the trial court therefore should have, right then and there, dismissed the case without prejudice. Even though the court did not do so, it is Zag Built's position that the late June 2015 complaint had not commenced the case for purposes of subsection 803.5(9); in other words, there was no case in late June 2015.

¶ 10 According to Zag Built, the Currys did not take any action to commence the case until they filed an amended complaint in mid-May 2016, which was obviously more than two years after the early January 2014 date on which the claim accrued. The trial court should therefore have dismissed the case with prejudice, Zag

built says, because the Currys' claim was, by then, barred by the statute of limitations.

¶ 11    Zag Built raised these points in the trial court, via a motion for summary judgment and in a petition for C.A.R. 4.2 review that it filed in the trial court.  The court disagreed with Zag Built's position.

¶ 12    We granted the Zag Built's petition under C.A.R. 4.2 for interlocutory review of the trial court's order.  We now affirm because we disagree with Zag Built's contentions.

## I.    Background and Procedural History

¶ 13    Taking up our narrative again, the Currys filed a document that they described as a "status report" in mid-September 2015. The report stated that

- they had filed their complaint "in order to preserve the applicable statute of limitations";

- the claims raised in the complaint "likely f[e]ll under" the Act, which required them "to engage in [a] [n]otice of [c]laim process";

- they had retained an expert to review the alleged defects, and they were "attempting to coordinate with [Zag Built]

5

with regard to the [n]otice of [c]laim and related
inspection process"; and

- they asked the court for "an additional 120 days to
engage in and complete the [n]otice of [c]laim process,
before [requiring them] . . . to effectuate service of
process" on Zag Built.

¶ 14 Not having heard from the trial court, the Currys did not file anything else until the beginning of March 2016. (The time between mid-September and the beginning of March was obviously more than 120 days.) They then submitted an update to the status report; they had not filed anything else after they had filed the status report in September. They reported that their expert had "complete[d] the inspection and review process," and they attached a copy of the expert's report.

¶ 15 The update also stated that they would continue pursuing a "notice of claim" process. But, they added, if that process proved to be futile, they would, within ninety days, "proceed forthwith with formal service upon defendants, and proceed with litigation of this matter" within ninety days.

¶ 16    The trial court did not do anything in response to either the status report or the update.

¶ 17    In mid-May 2016, the Currys filed a second update. They informed the court that they had sent out notices of claim, but that Zag Built had not "requested to perform an inspection of the subject property."

¶ 18    They filed an amended complaint at the same time. They said that they would serve it on Zag Built "in the very near future."

¶ 19    They served Zag Built in late May. (We note that the return of service is not in the appellate record, but Zag Built admits that it was served.)

¶ 20    In early July 2017, Zag Built filed a motion for summary judgment. It contended that the trial court should dismiss the case for two reasons.

> 1. Citing Rule 4(m), Zag Built asserted that the Currys had not served it within sixty-three days of when they had filed the original complaint. And the Currys had not shown that there was good cause to allow them to serve Zag Built more than sixty-three days after they had filed the complaint.

2. The statute of limitations had already run because the Currys had not complied with the Act's notice-of-claim procedures for more than two years after their claim against Zag Built had accrued.

¶ 21 The trial court denied the motion. It decided that

- a provision of the Act automatically stayed the case when the Currys filed their original complaint toward the end of June 2015;

- this statutory stay lasted until mid-April 2016;

- "the necessity of complying with [the Act] would have constituted good cause for an extension of time under which to serve defendant pursuant" to Rule 4(m); and

- the statute of limitations did not expire because "[t]he complaint was filed within the two-year statute of limitations period."

II.    Standard of Review and General Legal Principles

¶ 22 This case touches on three kinds of issues: (1) a trial court's decision to deny a motion for summary judgment; (2) the interpretation of a rule of civil procedure; and (3) the interpretation of statutes. We review each of these issues de novo. *Goodman v.*

*Heritage Builders, Inc.*, 2017 CO 13, ¶ 5 (interpreting statutes); *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1218 (Colo. 2002)(denying summary judgment); *Maldonado v. Pratt*, 2016 COA 171, ¶ 15 (interpreting rules of civil procedure).

¶ 23    Turning to the general principles that guide our de novo review of these issues, we observe the following:

- "A court may grant summary judgment if the plaintiff's claim is barred by the governing statute of limitations," but it "cannot grant summary judgment on this basis if there are disputed issues of fact about when the statute of limitations began running." *Colo. Pool Sys., Inc. v. Scottsdale Ins. Co.*, 2012 COA 178, ¶ 67 (*cert. granted in part* Sept. 3, 2013).

- "We apply statutory construction principles to procedural rules," and we therefore interpret them "according to [their] commonly understood and accepted meaning, otherwise known as [their] plain language." *Johnson v. VCG Rests. Denver, Inc.*, 2015 COA 179, ¶ 8.  When interpreting rules of civil procedure, we must "construe them liberally to effectuate their objective to secure the

9

just, speedy, and inexpensive determination of every case and their truth-seeking purpose." *DCP Midstream, LP v. Anadarko Petroleum Corp.*, 2013 CO 36, ¶ 24.

- When we interpret statutes, we must ascertain and give effect to the legislature's intent. *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 16. "We construe the entire statutory scheme to give consistent, harmonious, and sensible effect to all parts," and "we give effect to words and phrases according to their plain and ordinary meaning." *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011). If a statute's language is clear, we apply it as the legislature wrote it. *Id.* But, "[i]f the statutory language is ambiguous, we may use other tools of statutory interpretation to determine the General Assembly's intent." *Id.*

### III. The Act

¶ 24    The legislature passed the Act "for the purpose of streamlining construction defect litigation." *CLPF-Parkridge One, L.P. v. Harwell Invs., Inc.*, 105 P.3d 658, 664 (Colo. 2005).

¶ 25    In 2003, the legislature amended the Act to add section

13-20-803.5, which created a "notice of claim process."  The

notice-of-claim process is essentially an alternative dispute

resolution mechanism.  *See Melssen v. Auto-Owners Ins. Co.*, 2012

COA 102, ¶ 31.  As is pertinent to our analysis, it provides that

- the plaintiff "shall send or deliver a written notice of
  claim to the construction professional" "[n]o later than
  seventy-five days before filing an action."
  § 13-20-803.5(1);

- the construction professional has thirty days to complete
  a property inspection after receiving the notice.
  § 13-20-803.5(2);

- the construction professional has thirty days after the
  inspection to make an offer of settlement.
  § 13-20-803.5(3);

- the claimant has fifteen days after the offer of settlement
  to accept or "the offer shall be deemed to have been
  rejected."  § 13-20-803.5(4); and

- "[i]f no offer is made by the construction professional or if
  the claimant rejects an offer, the claimant may bring a[]

[civil action in district court] against the construction professional . . . ." § 13-20-803.5(6).

## IV.  Rule 4(m)

¶ 26    Zag Built contends that the trial court erred when it did not dismiss the Currys' case under Rule 4(m).  We disagree.

### A.  Waiver

¶ 27    The Currys contend that Zag Built waived this issue because it waited too long to raise it.  They rely on *Cervi v. Town of Greenwood Village*, 147 Colo. 190, 193-94, 362 P.2d 1050, 1053 (1961), in which our supreme court held that the defendants had waived their laches argument because they had helped "nurse[] the case along" for over four years.  *Id.* at 193, 362 P.2d at 1052.  Indeed, the defendants had "acquiesced in and at times instigated the delays . . . ."  *Id.* at 195, 362 P.2d at 1053.  For example, the defendants had negotiated with the plaintiffs to settle the case, and they had asked the trial court to postpone the trial several times.  *Id.* at 194, 362 P.2d at 1053.

¶ 28    The record in this case, unlike the record in *Cervi*, does not indicate that Zag Built did anything to acquiesce in or to instigate any of the delay.  For example, Zag Built did not ask the trial court

12

to delay any of the proceedings.  We therefore conclude that Zag Built did not waive this issue.

## B.    Analysis

¶ 29     Zag Built contends that the plain language of Rule 4(m) (1) requires a trial court to dismiss a case if the defendant has not been served within sixty-three days of when the complaint was filed; unless (2) the plaintiff shows good cause why the defendant was not served within those sixty-three days; and (3) the trial court finds good cause at the same time that it extends the time to serve the defendant.  We disagree.

¶ 30     The Colorado Supreme Court added Rule 4(m) to the Colorado Rules of Civil Procedure in 2013.  Rule Change 2013(12), Colorado Rules of Civil Procedure (Amended and Adopted by the Court En Banc, Sept. 5, 2016), https://perma.cc/964J-7DYN.  Before the court adopted Rule 4(m), the Rules of Civil Procedure did not provide a time limit for when plaintiffs had to serve defendants. *Malm v. Villegas*, 2015 CO 4, ¶ 10.  Rather, a trial court could dismiss a complaint under C.R.C.P. 41(b)(1) "if service on the opposing party was not had within a reasonable time after commencing an action by filing." *Id.* at ¶ 11.

13

¶ 31    But, since 1983, the Federal Rules of Civil Procedure have featured a provision similar to Rule 4(m). *See Henderson v. United States*, 517 U.S. 654, 661 (1996). Fed. R. Civ. P. 4(m) is nearly identical to our own rule, except for the number of days. *See* Fed. R. Civ. P. 4(m)(noting the current time limit of ninety days, which became effective in 2015). When our rule is substantially similar to a federal rule, we may look to federal authority for guidance in interpreting our rule. *Benton v. Adams*, 56 P.3d 81, 86 (Colo. 2002).

¶ 32    In *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995), the Tenth Circuit provided guidance, in the form of a three-step analysis, on how trial courts should apply Fed. R. Civ. P. 4(m). Initially, a court must decide whether a plaintiff has shown good cause for why it has not served a defendant within the period established by the rule. *Id.* Then, if the plaintiff establishes good cause, it is "entitled to a mandatory extension of time." *Id.* Last, if the plaintiff does not establish good cause, then the court has two options. It can either give the plaintiff additional time to serve the defendant, or it can dismiss the complaint without prejudice. *Id.*

¶ 33    Before the court can apply this analysis, it must give the plaintiff notice that it is going to do so. *See Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1111 (10th Cir. 2008). This preliminary notice requirement "affords the plaintiff the opportunity to show good cause for improper service" or it allows it to establish that it "did, in fact, serve" the defendant. *Id.* A court abuses its discretion if it dismisses a complaint without giving the plaintiff notice and an opportunity to respond. *Id.*

¶ 34    In this case, the Currys filed their complaint in late June 2015. C.R.C.P. 4(m) therefore required them to serve Zag Built on or before late August 2015. But, the Currys did not serve Zag Built within that period, and they did not notify the court that they had not done so. Yet, importantly, the trial court did not inform the Currys that it was considering dismissing the case without prejudice because they had not yet served Zag Built.

¶ 35    Did the trial court err when it did not dismiss the complaint, on its own motion, in late August 2015 under Rule 4(m)? We do not think so, for two reasons.

¶ 36    First, the plain language of Rule 4(m), *see Johnson*, ¶ 8, gives a court discretion because it provides the court with three options.

15

*See Bruce W. Higley, D.D.S., M.S., P.A. Defined Benefit Annuity Plan v. Kidder, Peabody & Co.*, 920 P.2d 884, 891 (Colo. App. 1996)("To say that a court has discretion in resolving an issue means that it has the power to choose between two or more courses of action and that it is therefore not bound in all cases to select one over the other."). The court can

- give the plaintiff notice that it is contemplating dismissing the case for lack of service and ask the plaintiff to show good cause why it should not, *see Sanders*, 544 F.3d at 1111; *Espinoza*, 52 F.3d at 841;

- "order[] that service be made within a specified time[,]" *see Espinoza*, 52 F.3d at 841; or

- dismiss the case without prejudice after having given the plaintiff notice, *see id.*

In other words, Rule 4(m)'s "sixty-three-day period for effecting service is not a hard deadline." *Taylor v. HCA-HealthONE LLC*, 2018 COA 29, ¶ 47.

¶ 37     Second, the trial court did not give the Currys notice during the original sixty-three-day period that it was considering dismissing the case. Providing notice to a plaintiff is a condition

16

precedent to a trial court's decision to dismiss a case.  *Sanders*, 544 F.3d at 1111; *see also Taylor*, ¶ 23 ("[W]e read the sixty-three-day deadline [in Rule 4(m)] as a condition precedent only to dismissal or a new deadline.").  Without such notice, the trial court is unable to evaluate why the plaintiff did not serve the defendant within sixty-three days.  *See Sanders*, 544 F.3d at 1111 (stating that "the district court did not give the plaintiffs an opportunity to argue that . . . they had good cause not to" serve defendant outside the time limit in Fed. R. Civ. P. 4(m)).  Because the trial court did not give the Currys notice, they did not know that they needed to supply the court with good cause.  This means that the trial court did not err when it did not dismiss the case in late August 2015, sixty-three days after the Currys had filed their complaint.

¶ 38    In reaching this conclusion, we reject Zag Built's assertion that a general order, such as a delay reduction order, would be sufficient notice under C.R.C.P. 4(m).  The division in *Taylor* observed that "[t]he purpose of the notice is to spur counsel to action, with a warning that the window for obtaining service is closing and that a failure to meet the deadline might have dire consequences."  *Id.* at ¶ 26.  The division therefore concluded that

17

"[a] boilerplate delay reduction order issued within a matter of days of the filing date may not serve the rule's intended purpose." *Id.*

¶ 39    As we indicated above, Rule 4(m)'s plain language, as well as the case law construing its federal counterpart, convinces us that a court's finding of good cause is only one mechanism to extend the service-of-process period. *See Espinoza*, 52 F.3d at 841. Indeed, a court can extend the period to serve a defendant "even if the plaintiff has no excuse at all." *United States v. McLaughlin*, 470 F.3d 698, 701 (3d Cir. 2006).

¶ 40    Up to this point, we have concluded that Rule 4(m) did not automatically require the trial court to dismiss this case, and it did not require the trial court to dismiss the case because the Currys did not show good cause. The court still had discretion to choose between the two remaining Rule 4(m) options: it could order the Currys to serve defendants within a specified time or it could dismiss the case without prejudice.

¶ 41    But this case languished for almost a year without the court taking any action. Does that mean that the trial court erred? *See Taylor*, ¶ 25 ("We . . . conclude that [Rule 4(m)] requires notice before dismissal, but does not require notice after expiration of the

service deadline."). We conclude that it did not because section 13-20-803.5(9) stayed the case until mid-April 2016.

¶ 42 How can this be? The trial court stated, in its order denying Zag Built's summary judgment motion, that the notice-of-claim process "ha[d] not been complied with before the case [had been] filed." Subsection 803.5(9) therefore "required" the court "to stay the proceedings until the process was completed." And, as the trial court observed, subsection 803.5(9) stayed the entire "proceedings." This meant, as is pertinent to our analysis, that it stayed the Currys' obligation to serve Zag Built under Rule 4(m) within sixty-three days.

¶ 43 We conclude that the trial court applied subsection 803.5(9) correctly. Because of subsection 803.5(9), a court must stay a case if a plaintiff files a complaint before completing the notice-of-claim process. We further conclude that, by using the word "shall," the legislature intended that such stays would be mandatory. *See Nowak v. Suthers*, 2014 CO 14, ¶ 24. And we know that the Act does not require a plaintiff to include a statement in its complaint that it has already complied with the notice-of-claim process. *Land-Wells v. Rain Way Sprinkler & Landscape, LLC*, 187 P.3d

19

1152, 1154 (Colo. App. 2008)(The Act does "not require [the] plaintiff to prove anything more than the elements of her common law negligence claim . . . .").

¶ 44     We recognize that the Currys stated in their original complaint that they had "met all [of the Act's] conditions and requirements." This misstatement apparently indicated that the Currys had complied with the Act's notice-of-claim procedures.  We know, however, that they had not done so.  But we do not think that this misstatement makes any difference to this case's outcome.  As we have recognized, *see id.*, the Act did not require the Currys to inform the court that they had complied with the notice-of-claim procedures.

¶ 45     (We do not reach the issue whether the misstatement would have given the trial court authority to dismiss the case under Rule 4(m).  We have already decided that the court could not have done so without notifying the Currys.  And, because the court did not send out such notice, the effect of the misstatement on this case is, by now, a moot point.)

¶ 46     In mid-September 2015, the status report informed the trial court that the Currys had not finished the notice-of-claim process.

As a result, we conclude that section 13-20-803.5(9) automatically stayed the case. And, once the automatic stay applied, the case could not move forward until the trial court had lifted it.

¶ 47    The following authority supports our conclusion.

¶ 48    First, a stay "stops all progress in the lawsuit," and it "preserves the status quo." *Monatt v. Pioneer Astro Indus., Inc.*, 42 Colo. App. 265, 266, 592 P.2d 1352, 1354 (1979).

¶ 49    Second, the Act provides that the stay "shall remain in effect until" the notice-of-claim process is completed. § 13-20-803.5(9). In this case, the trial court lifted the stay, finding that it had expired in mid-April, a date that was thirty days after the Currys had sent the notice of claim and Zag Built had not asked to inspect the house. § 13-20-803.5(2). Once the court lifted the stay, the case could proceed from the point where it had left off. *Monatt*, 42 Colo. App. at 266, 592 P.2d at 1354.

¶ 50    Third, once the court lifted the stay, Rule 4(m)'s sixty-three-day time limit began to run again. Ultimately, the Currys served Zag Built in late May 2016, or forty-one days after the court had lifted the stay.

21

¶ 51 Fourth, *Malm*, on which Zag Built relies, does not persuade us to reach a different result. *Malm* was based on a case that the plaintiff had filed in 2005, or years before Rule 4(m) came into existence.

¶ 52 In *Malm*, ¶ 17, the supreme court concluded that a plaintiff's inability to serve a defendant for seven-and-one-half years was "unreasonable" because the plaintiff could not establish either that (1) the defendant had engaged in "wrongful conduct"; or (2) there had been "some formal impediment to service." But *Malm* is inapplicable because the supreme court's whole analysis focused on whether a delay of service was "reasonable" under C.R.C.P. 41(b)(2), which dealt generally with a party's failure to prosecute a case. *Id.* at ¶ 11 (noting that, before the supreme court adopted Rule 4(m), a trial court could dismiss a complaint "for failure to prosecute if service on the opposing party was not had within a *reasonable time* after commencing an action by filing")(emphasis added).

¶ 53 The *Malm* court explicitly declined to apply Rule 4(m). *Id.* at ¶ 19 ("[I]t is unnecessary for us to resolve the applicability of [Rule 4(m)] to this case . . . ."). And, as we have observed, Rule 4(m) established a new procedure that governs how a court decides

whether it should dismiss a complaint because a plaintiff has not timely served a defendant.

¶ 54     Fifth, even if we were to apply *Malm* to this case, we would nonetheless reach the same result. *Malm* noted that, "within some initial period, measured in days rather than years, service after filing will be treated as presumptively reasonable." *Id.* at ¶ 19. *Malm*'s reasonableness analysis therefore only pertains to cases of "longer delay." *Id.* Relying on *Malm,* we conclude that the delay in service in this case was presumptively reasonable.

¶ 55     As a point of reference, the *Malm* court pointed to the 116-day period between filing and service of process in *Garcia v. Schneider Energy Services, Inc.*, 2012 CO 62, as an example of a presumptively reasonable delay. Although the delay in this case was nearly eleven months, this calculation did not take into account the statutorily required stay. Once the period consumed by the stay is deducted from the eleven months, the time between the filing of the complaint and the entry of the stay amounted to eighty days. And the time from the expiration of the stay to service on Zag Built amounted to an additional forty-one days. So the total delay was only 121 days, a mere five days longer than the delay in

*Garcia,* which the supreme court considered "presumptively reasonable." *Malm,* ¶ 19.

¶ 56   Sixth, we are not persuaded by *Maldonado,* on which Zag Built also relies. In *Maldonado,* the plaintiffs amended their complaint to add a new party under C.R.C.P. 15(c). That rule provided that an amended complaint related back to the date of the original complaint if the plaintiff had satisfied a number of conditions "within the period provided by Rule 4(m)." *Maldonado,* ¶ 21.

¶ 57   The *Maldonado* division concluded that the plaintiffs had not satisfied these conditions in time. *Id.* at ¶ 32. And, because the plaintiffs had amended their complaint after the statute of limitations had expired, the division determined that the additional party should be dismissed. *Id.* But we think that *Maldonado* is inapposite because it relied on C.R.C.P. 15(c)'s relation-back doctrine, which does not apply to this case because the Currys named Zag Built in their original complaint.

¶ 58   Based on the preceding analysis, we do not need to address Zag Built's contentions that (1) the Currys did not establish good cause for the purposes of Rule 4(m); and (2) the trial court did not make sufficient findings that the Currys had shown good cause.

## V. Notice of Claim and the Statute of Limitations

¶ 59    Zag Built contends the trial court should have dismissed this case because the Currys did not send it a notice of claim until after the statute of limitations had run. We disagree.

### A. Preservation

¶ 60    The Currys contend that Zag Built did not preserve this contention because it did not refer to section "13-80-105," C.R.S. 2017, in its summary judgment motion. But this statute does not apply to this case because it concerns "[l]imitations of actions against land surveyors." *Id.* Based on the context, we think, instead, that the Currys intended to refer to section 805, which describes tolling under the Act.

¶ 61    To preserve a contention, a party does not have to cite a specific statute, but it must at least raise the issue to the trial court, *see Maslak v. Town of Vail*, 2015 COA 2, ¶¶ 11-12, so that the court has an opportunity to rule on it, *see Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992).

¶ 62    We agree that Zag Built did not cite section 805 in its motion for summary judgment. But it raised the tolling issue, albeit obliquely and fleetingly, in its summary judgment motion. The

motion contained a chart that summarized events on dates that Zag Built thought were relevant to calculating when the statute of limitations had run. For one of these dates, in early March 2016, the chart described the following event: "Expiration of statute of limitations (assuming 63 day period does not *toll* statute of limitations)." (Emphasis added.)

¶ 63 In response, the trial court discussed tolling in its summary judgment order. For example, it recognized that (1) Zag Built had "argue[d] that[,] even if the timely filing of the original [c]omplaint and [j]ury demand in conjunction with Rule 4(m) *tolled* the statute of limitations for an additional 63 days" after the early January 2016 deadline; then (2) the Currys "were still required to serve" Zag Built "with a copy of the [c]omplaint before the statute of limitations expired" in early March 2016, which would have been sixty-three days after the early January 2016 deadline. (Emphasis supplied.)

¶ 64 We therefore conclude that Zag Built's minimal reference to tolling in the summary judgment motion was just enough to preserve the tolling issue. *See Rael v. People*, 2017 CO 67, ¶ 17 ("We do not require that parties use 'talismanic language' to preserve an argument for appeal."); *Maslak v. Town of Vail*, 2015

26

COA 2, ¶ 12 (because the substance of the issue was presented to the trial court, the addition of a statutory reference on appeal "simply provide[d] additional support for the[] argument"); *Grohn v. Sisters of Charity Health Servs. Colo.*, 960 P.2d 722, 727 (Colo. App. 1998)(noting that (1) an argument is "not properly before an appellate court where the opposing party was unable to respond"; and (2) an argument is not properly before an appellate court if a trial court did not have an opportunity to make "findings or conclusions").

¶ 65 We note that Zag Built also asserts that it preserved the tolling issue because it had specifically referred to section 805 in its motion to certify the trial court's order for this interlocutory appeal. We disagree for the following reasons.

¶ 66 First, C.A.R. 4.2(c) states that the "party seeking to appeal shall move for certification . . . of the order to be appealed . . . ." This language suggests that new issues should not be raised in the motion for certification.

¶ 67 Second, allowing one party to raise new issues in the motion for certification creates procedural problems for the other party.

What Rule governs the other party's response?  C.R.C.P. 56?  Some other rule?

¶ 68    Third, raising new issues in a motion for certification is akin to raising new issues in a motion to reconsider.  A trial court would not "abuse its discretion in declining to reconsider or reverse its summary judgment ruling based on [a] new argument or theory" raised in a motion to reconsider.  *Hice v. Lott*, 223 P.3d 139, 149 (Colo. App. 2009).  And would allowing one party to raise new issues in the motion for certification be the equivalent of authorizing a second summary judgment motion that the court of appeals would have to litigate in the first instance?

### B.    Analysis

¶ 69    Zag Built's contention goes like this:

- The Act states that complying with the notice-of-claim process is (1) a prerequisite to filing a claim; and (2) the only way to toll the statute of limitations.

- The filing of a complaint before the notice-of-claim process is completed therefore does not (1) begin a lawsuit; or (2) stop the statute of limitations from running.

- The Currys did not complete the notice-of-claim process before they filed their complaint in mid-June 2015.

- The Currys' complaint therefore did not begin this lawsuit or stop the statute of limitations from running.

- The Currys did not complete the notice-of-claim process until after the statute of limitations had expired.

¶ 70    We disagree with this contention for the following reasons.

¶ 71    First, the statute of limitations stops running once a case is commenced.  *See Malm*, ¶ 13.  In Colorado, a case commences when a plaintiff files a complaint.  C.R.C.P. 3.  The Currys filed their complaint in mid-June 2015, before the statute of limitations had expired.

¶ 72    Zag Built cites *Broker House International v. Bendelow*, 952 P.2d 860, 862-63 (Colo. App. 1998), for the proposition that the statute of limitations continues to "run until all the prerequisites for *filing a case* are met." (Emphasis added.)  In *Broker House*, the plaintiff submitted its complaint along with a check to pay the docketing fees.  *Id.* at 862.  The check bounced, and the plaintiff did not pay the filing fee until after the statute of limitations had run. *Id.*

¶ 73    Zag Built also relies on *Western Electrical Co. v. Pickett*, 51

Colo. 415, 423-24, 118 P. 988, 991 (1911), in which our supreme

court held that a plaintiff had not satisfied all of the prerequisites

for filing a case because it had not paid a fee required for a foreign

corporation to prosecute a case in Colorado.

¶ 74    But there is no suggestion that the Currys did not pay a filing

fee or that it was a foreign corporation that had not paid a fee.

Rather, they satisfied the requirements for filing a complaint and,

by doing so, commenced this case.

¶ 75    More importantly, we disagree with Zag Built's use of these

cases to establish the false premise that failing to comply with the

notice-of-claim process is the equivalent of not paying such fees.

For example, *Broker House* relies on a well-established proposition:

"a case cannot proceed to a determination of the issues without

payment of the docket fee."  952 P.2d at 862.  But there is nothing

well-established that links the notice-of-claim process with the

running of the statute of limitations.  To the contrary, section

13-80-104, which sets out the statute of limitations for actions

against builders, does not refer to such a link.

¶ 76     This leads to our second point: the notice-of-claim process is not a prerequisite to filing a complaint or commencing an action. The general rule contained in the notice-of-claim process appears in section 13-20-803.5(1): "No later than seventy-five days before filing an action against a construction professional . . . a claimant shall send or deliver a written notice of claim to the construction professional by certified mail, return receipt requested, or by personal service." And the general rule is reinforced by section 13-20-803.5(6), which states that "[i]f no offer is made by a construction professional . . . the claimant may bring an action against the construction professional for the construction defect claim described in the notice of claim . . . ."

¶ 77     But we think that subsection 803.5(9) creates an exception to the general rule. Recall that it states, "Any action commenced by a claimant who fails to comply" with the notice-of-claim procedures "shall be stayed . . . ." § 13-20-803.5(9). In other words, subsection 803.5(9) tells us that *if* a plaintiff files a complaint *before* completing the notice-of-claim process, *then* the court will stay the case until the plaintiff completes the process. Although the legislature contemplated that the preferred practice would have the

31

plaintiff completing the notice-of-claim process before filing a complaint, it also allowed for the prospect that a plaintiff would file a complaint first. *See Gonzales v. Advanced Component Sys.*, 949 P.2d 569, 574 (Colo. 1997)("If separate clauses in the same statutory scheme may be harmonized, but would be antagonistic under a different construction, the court should adopt the construction that results in harmony.").

¶ 78    Third, if the Act made completion of the notice-of-claim process a prerequisite to filing a complaint or to commencing an action, it would require the court to *dismiss* a case that a plaintiff filed before the notice-of-claim process was completed, not to *stay* it. Reading the Act to require a court to dismiss a case in these circumstances would require us to (1) ignore subsection 803.5(9); and (2) read the statute to say something that it does not. *See Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1204 (Colo. App. 2010)("[W]e will not interpret a statute to mean that which it does not express.").

¶ 79    Fourth, we conclude that satisfying the notice-of-claim process is not a jurisdictional prerequisite to filing a complaint because a trial court is not required to dismiss a complaint if it has been filed

32

before the notice-of-claim process has been satisfied.  Generally, we will "construe a statute to limit jurisdiction only when that limitation is explicit." *Aviado v. Indus. Claim Appeals Office*, 228 P.3d 177, 183 (Colo. App. 2009).  Colorado's Governmental Immunity Act includes an example of such an explicit limitation.  It states that an injured party must send a notice of claim to a governmental agency before filing a complaint.  § 24-10-109, C.R.S. 2017.  Sending the notice is "a jurisdictional prerequisite to any action . . . and failure of compliance shall forever bar any such action." § 24-10-109(1).

¶ 80    The Act does not contain a similar bar.  Rather, it provides an explicit remedy when a plaintiff files a complaint before completing the notice-of-claim process: a stay.

¶ 81    Fifth, Zag Built contends that (1) section 13-20-805 is the only mechanism for tolling the statute of limitations; (2) the statute of limitations is only tolled if a plaintiff satisfies the notice-of-claim process; (3) the Currys did not send their notice of claim to Zag Built until after the statute of limitations expired; and (4) the trial court conflated the concepts of stay and tolling.

¶ 82   A tolling statute suspends the running of the statute of limitations. *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004). So section 805 would toll the applicable statute of limitations from the time that a plaintiff files a notice of claim until "sixty days after the notice of claim process" has been completed. *See* § 13-20-805.

¶ 83   Zag Built cites cases for the proposition that the only way that the Currys could save their case from an abrupt end brought on by the statute of limitations would be to rely on the tolling provision in section 805. *See, e.g., Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186 (Colo. 2010); *Sopris Lodging, LLC v. Schofield Excavation, Inc.*, 2016 COA 158. But those cases are not applicable to this one because they addressed significantly different issues. *Smith* merely held that the "repair doctrine" was inconsistent with the Act. *Sopris Lodging* concluded that, if a defendant does not bring an indemnity claim in a separate lawsuit, then the only method to toll the statute of limitations would be found in section 805.

¶ 84   But, more fundamentally, Zag Built's contention that section 805 governs the outcome of this appeal is based on an invalid premise — that the Currys' initial complaint, filed in late June 2015, was a nullity. We have already concluded that it was not a

nullity; rather, it commenced this case, and it was filed within the statute of limitations. The concept of tolling therefore does not apply.

¶ 85    The order is affirmed, and the case is remanded to the trial court for further proceedings.

JUDGE BERGER and JUDGE FREYRE concur.