UNITED FIRE GROUP, as subrogee
of METAMORPHOSIS SALON,
Plaintiff–Appellant,

v.

POWERS ELECTRIC, INC. and Gary
J. Powers, d/b/a Powers Electric,
Inc., Defendants–Appellees.

No. 09CA1869.

Colorado Court of Appeals,
Div. VII.

June 24, 2010.

Ricardo Barrera, Denver, Colorado;
Dworkin, Chambers, Williams, York, Benson
& Evans, P.C., Geri O'Brien Williams, Denver, Colorado, for Plaintiff–Appellant.

Anderson, Dude, Bailey & Lebel, P.C., Steven P. Bailey, Jacob F. Kimball, Colorado Springs, Colorado, for Defendants–Appellees.

Opinion by Judge BERNARD.

Plaintiff, United Fire Group (the insurer), appeals the trial court's summary judgment in favor of defendants, Powers Electric, Inc. and Gary J. Powers (collectively the electrician). We affirm.

## I. Background

On March 6, 2006, a fire damaged property owned by Metamorphosis Salon (the salon), which was insured by the insurer. Neither the salon nor the insurer knew what caused the fire. Three weeks later, on March 27, a fire investigator gave the insurer a report that found that faulty wiring in an electrical exit sign caused the blaze. The electrician had installed the exit sign.

The insurer made a series of payments to the salon to compensate the salon for the losses incurred in the fire. The salon cashed these payments between April 24 and August 7, 2006.

On March 11, 2008, the insurer filed a subrogation claim against the electrician. The insurer claimed that the electrician had negligently installed the exit sign, and that this negligence caused the fire.

The electrician moved for summary judgment, alleging that the insurer's case was barred because it had not been filed within the applicable statute of limitations. The electrician contended that the statute of limitations began to run on the date of the fire. The insurer replied that the statute of limitations began to run either on (1) the date the insurer received the fire investigator's report, which determined the fire's cause; or (2) the dates when the salon cashed the insurance payments.

The trial court granted the electrician's motion for summary judgment. The court determined that the statute of limitations began to run on the date of the fire. Therefore, because the insurer filed its subrogation lawsuit more than two years after this date, its case was barred.

## II. General Summary Judgment Principles

We review the decision to grant a motion for summary judgment de novo. *Two Denver Highlands Ltd. Liab. Ltd. P'ship v. Stanley Structures, Inc.*, 12 P.3d 819, 821 (Colo. App.2000). Summary judgment is proper where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Id.* "In the context of summary judgment, a genuine issue of material fact is one which, if resolved, will affect the outcome of the case." *City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1082 (Colo.2009). The moving party bears the burden of "establishing an absence of a genuine issue of material fact." *Id.* Summary judgment may be granted to a defendant based on a determination that the suit was not filed within the applicable statute of limitations. *See Persichini v. Brad Ragan, Inc.*, 735 P.2d 168, 173 (Colo.1987).

## III. Statute of Limitations

### A. Preliminary Issue

■ As a preliminary matter, the insurer contends that the trial court made an "impermissible assumption" in its order granting summary judgment. The electrician conceded, for purposes of its summary judgment motion, that its negligence caused the fire.

The insurer argues that the trial court should not have accepted the electrician's concession because it pertained to a genuine issue of material fact that is ultimately disputed by the parties. As a result, the insurer argues that the trial court's decision to grant the summary judgment order must be reversed because that order relied upon a disputed and genuine issue of material fact. We disagree.

Whether the electrician was negligent was irrelevant to the analysis of the statute of limitations issue. Further, if the statute of limitations bars the insurer's claim, then the issue of whether the electrician's negligence caused the fire is not "material" because it has no further effect on the case.

## B. Physical Manifestation of the Defect

█ This is a construction defect case brought under the Construction Defect Action Reform Act (CDARA), sections 13–20–801 to –807, C.R.S.2009. The parties agree that such cases are governed by a two-year statute of limitations found in sections 13–80–102(1)(a) and –104(1), C.R.S.2009. They also agree that, under section 13–80–104(1)(b)(I), the two-year period begins to run when a claimant "discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury." In this case, the improvement in question was the electrician's installation of the exit sign.

The parties disagree, however, about what the phrase "physical manifestation[ ] of a defect in the improvement" means. The insurer contends that it could not determine the cause of the fire until the fire investigator provided the insurer with the results of his investigation. Without knowing the fire's cause, the insurer did not know that the fire had been caused by a defect. Without knowing that there was a defect, the insurer did not know, and could not have discovered in the exercise of reasonable diligence, the physical manifestation of that defect. Therefore, in the insurer's view, the two-year statute of limitations started to run on the date when the insurer received the fire investigator's report.

The electrician counters that the fire was the physical manifestation of the defect. Therefore, the insurer discovered, or could have discovered in the exercise of reasonable diligence, that there had been a fire on the day it occurred. We are persuaded by the electrician's argument.

This disagreement raises an issue of statutory construction. This is a question of law that we review de novo. We give effect to the legislature's intent in promulgating a statute by adopting an interpretation that best furthers that intent. To determine that intent, we examine the statute's plain language, and we give that language its common meaning. When such language is clear and unambiguous, we need not look to legislative history or other rules of statutory construc-tion. *Smith v. Executive Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010).

To implement the legislature's intent, we must read the statute as a whole. We must give "consistent, harmonious, and sensible effect to all [its] parts." *O'Donnell v. State Farm Mut. Auto. Ins. Co.*, 186 P.3d 46, 50 (Colo.2008).

*Smith*, another CDARA case, interpreted the same statute that we consider here and found its plain meaning to be clear. There, a homeowner argued that the statute of limitations begins to run when the injury occurs. The supreme court rejected this approach, concluding that the statute of limitations starts to run "when the homeowner first discovers or should have discovered the defect." 230 P.3d at 1189. In reaching this conclusion, the court observed that, "[i]t is possible that an injury itself could serve as initial discovery of a construction defect." *Id.* at 1189 n. 3.

A division of this court reached a similar conclusion in *Highline Village Associates v. Hersh Cos.*, 996 P.2d 250, 253 (Colo.App.1999), *aff'd in part and rev'd in part on other grounds*, 30 P.3d 221 (Colo.2001). There, the division stated that, to apply the statute of limitations in a CDARA case, "a claim accrues when a physical manifestation of a defect appears, *even though its cause is not known at that time.*" 996 P.2d at 253 (emphasis added).

Relying on the plain language of section 13–80–104(1)(b)(I), we conclude that the fire in this case was a "physical manifestation[ ] of a defect." As relevant here, the word "physical" is defined as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary." *Webster's Third New International Dictionary* 1706 (2002). "Manifestation" means "something that manifests or constitutes an expression of something else: a perceptible, outward, or visible expression." *Id.* at 1375. Applying these ordinary and common meanings, the fire, a natural or material thing, was the perceptible, outward, and visible expression of something else: the defective wiring in the exit sign.

Applying *Smith*, we further conclude that the damage caused by the fire—the injury here—served as the initial discovery of the defect. Applying *Highline Village Associates*, we also conclude that it was not necessary to know that the defect caused the fire for the fire to be the defect's physical manifestation.

In reaching these conclusions, we are mindful of two cases on which the insurer relies, *Criswell v. M.J. Brock & Sons, Inc.*, 681 P.2d 495, 498–99 (Colo.1984), and *Stiff v. BilDen Homes, Inc.*, 88 P.3d 639, 640–41 (Colo.App.2003). However, both are distinguishable.

In *Criswell*, the supreme court interpreted a predecessor to the statute of limitations at issue here. The court concluded that the language of the predecessor statute recognized that "discovery of the physical manifestations of a defect is not necessarily concurrent in time with discovery of the defect itself." 681 P.2d at 498–99. This meant that the predecessor statute of limitations was triggered when the injured party knew or should have known of the defective design or construction of an improvement, but not necessarily when the physical manifestations of the underlying defect were discovered. *See Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925, 933 (Colo.1993) (discussing *Criswell's* holding).

However, the predecessor statute was substantially modified and reenacted in 1986 to its present form, which refers to the discovery of the physical manifestation of a defect. *See id.* at 931. Before this modification, the statute stated:

> A claim for relief arises under this section at the time the damaged party discovers or in the exercise of reasonable diligence should have discovered the defect in the improvement which ultimately causes the injury, when such defect is of a substantial or significant nature.

Ch. 144, sec. 1, § 13–80–127(1)(b), 1979 Colo. Sess. Laws 631.

The statute was modified to state:

> Except as otherwise provided ... a claim for relief arises under this section at the time the claimant or the claimant's prede-cessor in interest discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury.

§ 13–80–104(1)(b)(I).

As a result, *Criswell's* analysis does not apply to this case because it concerns a statute of limitations employing different language. *Highline Village Assocs.*, 996 P.2d at 253. The significant difference for our analysis here is that the predecessor statute stated that a claim arose when the defect was discovered, and the present statute states that a claim arises when the physical manifestation of the defect is discovered.

In *Stiff*, the division stated that the trial court should not have granted summary judgment because there was a question of material fact concerning "the date on which plaintiff knew or should have known of the damage and its cause." *Stiff*, 88 P.3d at 641. However, the holding in *Stiff* focused on the amount of damage necessary to trigger the two-year statute of limitations. There was no discussion of whether it was also necessary for the cause of that damage to be known in order to begin the limitations period. Thus, we view as dictum *Stiff's* reference to learning the cause of the damage as being necessary to activate the statute of limitations.

Our conclusion is reinforced by three observations.

First, we look to the legislature's choice of language in other statutes. For example, section 13–80–108(1), C.R.S.2009, states that enumerated causes of action "accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."

Section 13–80–104(1)(b)(I) is different. Had the legislature intended to require that the statute of limitations in a CDARA case start to run after the injured party has discovered the precise defect that caused the injury, it could have easily done so by using language similar to that found in section 13–80–108(1). *See DISH Network Corp. v. Altomari*, 224 P.3d 362, 368 (Colo.App.2009).

Second, in a related vein, the insurer's argument would read the phrase "physical manifestation" out of the statute by focusing on when the injured party discovered, or reasonably should have discovered, the precise defect that caused the physical manifestation. We cannot adopt an interpretation that eliminates part of the statutory language because we are obligated to interpret statutes as a whole and to give harmonious and sensible effect to all their parts. *O'Donnell*, 186 P.3d at 50.

Third, adopting the insurer's position would undercut the policies that prompted CDARA's passage. CDARA aimed to "streamline construction litigation," *Smith*, 230 P.3d at 1190, with the purpose of "encourag[ing] the timely resolution of construction disputes," *Thermo Development, Inc. v. Central Masonry Corp.*, 195 P.3d 1166, 1170 (Colo.App.2008). Another central purpose of the legislation was to "decrease construction defect litigation, and reduce the costs of insuring construction professionals." Ronald M. Sandgrund & Scott F. Sullan, *The Construction Defect Action Reform Act of 2003*, 32 Colo. Law. 89, 89 (July 2003).

Conditioning the running of the statute of limitations in CDARA cases on discovery of the precise defect that caused the injury could result in substantial delays. For example, investigations designed to determine the presence of defects can be conducted shortly after the injury occurs, as was the case here, but they may begin long after the injury, and they may take considerable time. The open-ended period associated with such investigations is inconsistent with the timely resolution and streamlining of construction defect cases. By extending the time for bringing suits for construction defects, the insurer's position would not decrease the number of cases or reduce the costs for insuring construction professionals.

### C. Subrogation

The insurer argues that, based on principles of subrogation, it did not suffer any injury until the salon cashed the insurance payments. Therefore, under this argument, the two-year statute of limitations did not begin to run until either the salon cashed (1) the last insurance payment or, alternatively, (2) the first payment. We disagree.

 "[W]hen an insurer has paid its insured for a loss caused by a third party, it may seek recovery from the third party. The insurer then stands in the shoes of its insured." *State Farm Fire & Cas. Co. v. Weiss*, 194 P.3d 1063, 1066 (Colo.App.2008) (citation omitted). Stepping into the shoes of its insured gives the subrogated insurer "no greater rights than the insured, for one cannot acquire by subrogation what another, whose rights he or she claims, did not have." *Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 323 (Colo.2009) (quoting 16 *Couch on Insurance* § 222:5 (3d ed.)). Therefore, subrogation does not transform a subrogee's "claims at law into equitable actions." *Id.*

 Contrary to the insurer's position, Colorado case law indicates that section 13–80–104's statute of limitations applies to subrogation actions. *See Fire Ins. Exch. v. Monty's Heating & Air Conditioning*, 179 P.3d 43, 47 (Colo.App.2007) (applying section 13–80–104 to subrogation claim); *see also Union Ins. Co. v. RCA Corp.*, 724 P.2d 80, 82 (Colo.App.1986) ("The claim of a subrogee insurance carrier is derivative of the claim of its subrogor insured."), *overruled on other grounds by Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 207 n. 17 (Colo.1992).

We conclude that the existence of a subrogation claim does not alter section 13–80–104's statute of limitations for construction defects. Here, because of the fire, the salon suffered a loss. The insurer paid the salon for that loss; as a result, the insurer *then* acquired the right to stand in the salon's shoes to recover from defendant for the salon's loss. Hence, the insurer was required to use the salon's accrual date, which was the date of the fire. *See Union Ins.*, 724 P.2d at 82 (statute of limitations began to run against a subrogee when the claim accrues to its insured).

This result is supported by language in section 13–80–104(1)(b)(I). That section

states that a claim arises when the claimant or "the claimant's predecessor in interest" discovers the physical manifestations of the defect that cause the injury. Here, under the insurer's subrogation analysis, the salon was the insurer's predecessor in interest. Any claim that the salon had against the electrician arose on the day of the fire because the salon discovered the fire on that day. Therefore, under section 13–80–104(1)(b)(I), the insurer's claim arose on the same day that the salon's claim arose.

The judgment is affirmed.

Judge LICHTENSTEIN and Judge CONNELLY concur.