24CA0678 Stoecklein v Fayette Farms 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0678
Elbert County District Court No. 20CV30009
Honorable Theresa Slade, Judge

Lindsey Stoecklein and Chance Stoecklein,

Plaintiffs-Appellants,

v.

Fayette Farms, LLC,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Todd Collins & Associates, LLC, Todd Collins, Marc Tull, Stephanie Williams, Elizabeth, Colorado, for Plaintiffs-Appellants

Lasater & Martin, P.C., Janet B. Martin, Max S. Gad, Greenwood Village, Colorado, for Defendant-Appellee

¶ 1    Plaintiffs, Lindsey and Chance Stoecklein (collectively, the Stoeckleins),[1] appeal the district court's order granting summary judgment in favor of defendant, Fayette Farms, LLC (Fayette Farms). The Stoeckleins contend that in granting summary judgment, the district court erred by (1) applying the wrong statute of limitations, thus time barring their fifth claim for relief and (2) concluding there were no genuine issues of material fact as to when they were aware or should have been aware of the physical manifestation of defects to their home as a result of Fayette Farms' alleged negligent actions, thus time barring their fifth and sixth claims. We affirm.

## I.    Background

¶ 2    The Stoeckleins entered into an agreement with Redline Construction Corporation (Redline) to construct a manufactured home.[2] Redline transferred its duties and responsibilities under the contract to High Country Construction & Development, LLC (High Country). High Country served as the general contractor for the

---

[1] We later refer to the Stoeckleins by their first names because they share the same last name. We intend no disrespect by doing so.
[2] The contract was between the Stoeckleins and Eric Markowski, who conducted business as Redline Construction Corporation.

Stoeckleins' manufactured home. But High Country subcontracted with Fayette Farms to install the manufactured home on the Stoeckleins' lot.

¶ 3 The Stoeckleins moved into the home on June 14, 2019, and immediately discovered extensive damage and defects. The next day, the Stoeckleins notified High Country about the defective work, which included foundation cracks and cracking throughout the home, the inability to open and close doors and windows, problems with the floor, stairwell cracks, warped and cracked ceilings, and sagging throughout the structure. They requested that High Country repair the identified issues.

¶ 4 The Stoeckleins hired Steel Rhino Property (Steel Rhino) to inspect their home. Steel Rhino issued a report (the Steel Report) on June 29 that identified a general list of defects and recommendations to follow up with qualified professionals for further evaluation of the problems and for repairs. The Stoeckleins retained attorneys from Messner Reeves, LLP and later Todd Collins (Collins) to represent them in potential and then-filed construction defect claims. On July 25, Collins sent a letter to High Country

notifying them of the various defects observed in June 2019 and identified in the Steel Report.

¶ 5    On February 24, 2020, the Stoeckleins filed a lawsuit against High Country.  As part of the lawsuit, the Stoeckleins hired an engineering expert, Edward Fronapfel (Fronapfel), who issued a report (the Fronapfel Report) on September 30, 2021.  Through the Fronapfel Report, the Stoeckleins learned of additional defects to their home attributable to Fayette Farms.  Fayette Farms' work on the Stoeckleins' home included setting the home, raising the roof, and installing lap siding on the end walls.  The Fronapfel Report identified that Fayette Farms had caused damage to the Stoeckleins' foundation by parking a crane too close to the basement wall, causing the basement wall to bow and crack.

¶ 6    As a result of Fayette Farms' alleged negligent work, the Stoeckleins filed their fifth amended complaint on May 16, 2022.  Their fifth and sixth claims alleged that Fayette Farms failed to (1) strictly comply with the manufacturer's instructions when it installed the home, a violation of section 24-32-3316(1), C.R.S. 2024, which in turn constituted a deceptive trade practice in violation of section 6-1-105, C.R.S. 2024, of the Colorado Consumer

3

Protection Act (CCPA); and (2) install the home in accordance with industry standards and, thus, engaged in negligent conduct.[3]

¶ 7    Fayette Farms moved for summary judgment contending that the Stoeckleins' claims were time barred because they were not brought within the two year statute of limitations for construction defect claims under the Construction Defect Actions Reform Act (CDARA), section 13-80-104(1)(a), C.R.S. 2024.  In response, the Stoeckleins argued that the CCPA's three year statute of limitations applied to its fifth claim and that, because facts were disputed as to when they were or should have been aware of the defects caused by Fayette Farms, summary judgment should have been denied on the fifth and sixth claims.  The district court agreed with Fayette Farms, concluding that CDARA time barred those claims, as the statute of limitations began to accrue no later than August 2019.

II.    Standard of Review and Applicable Law

¶ 8    We review de novo a district court's order granting summary judgment.  *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 19.

---

[3] Although the Stoeckleins sued other companies and individuals, this appeal only concerns Fayette Farms.

¶ 9    Summary judgment is a drastic remedy and, therefore, is only appropriate where there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Sanchez v. Moosburger*, 187 P.3d 1185, 1187 (Colo. App. 2008). The party moving for summary judgment bears the initial burden of showing the nonexistence of any genuine issue of material fact, "and all doubts as to the existence of such an issue must be resolved against the moving party." *Stanczyk v. Poudre Sch. Dist. R-1*, 2020 COA 27M, ¶ 51 (quoting *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988)), *aff'd on other grounds*, 2021 CO 57.

¶ 10    The interpretation of when a claim accrues under a statute of limitations is an issue of law that we review de novo. *Rider v. State Farm Mut. Auto. Ins. Co.*, 205 P.3d 519, 521 (Colo. App. 2009). But whether the statute of limitations bars a particular claim because a court finds certain circumstances exist is generally a question of fact. *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 899 (Colo. App. 2003). A court may grant summary judgment if the plaintiff's claim is barred by the governing statute of limitations, but it "cannot grant summary judgment on this basis if there are disputed issues of fact

5

about when the statute of limitations began running." *Curry v. Zag Built LLC*, 433 P.3d 125, 130 (Colo. App. 2018).

¶ 11    To the extent our analysis requires statutory interpretation, we do so de novo. *Smith v. Exec. Custom Homes*, 230 P.3d 1186, 1189 (Colo. 2010). We must adopt a construction that "best effectuates the intent of the General Assembly and the purposes of the legislative scheme." *State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000). When construing a statute, we look first to the plain language of the statute and give words and phrases their ordinary meanings. *Fischbach v. Holzberlein* , 215 P.3d 407, 409 (Colo. App. 2009). If the statutory language is unambiguous, we do not resort to interpretive rules of statutory construction. *Seaman v. Colo. Manufactured Hous. Licensing Bd.*, 832 P.2d 1041, 1042 (Colo. App. 1991).

### III.    Analysis

¶ 12    CDARA "was intended to apply only to negligence in planning, design, construction, supervision, or inspection that results in a defect in an improvement to real property that causes an injury." *Two Denver Highlands Ltd. P'ship v. Dillingham Constr. N.A., Inc.*, 932 P.2d 827, 829 (Colo. App. 1996). CDARA was also

intended "to limit actions against building professionals only for claims of injury arising from defects in the improvement they create." *Id.* Therefore, a court must determine the type of action the Stoeckleins advance. They concede that their sixth claim sounds in negligence such that CDARA's two year statute of limitations applies. Because of this concession, we first address whether the CCPA's statute of limitations applies to the Stoeckleins' fifth claim. We do so because, if the CCPA limitations period does not apply, then CDARA's two year statute of limitations governs both claims.

### A. The CCPA Statute of Limitations Does Not Apply

¶ 13    The district court concluded that the CCPA's statute of limitations did not apply to the fifth claim because CDARA unambiguously excluded the application of other statutes of limitation for all construction defect cases. For three reasons, we agree with the district court's conclusion.

¶ 14    First, the court's plain reading of section 13-80-104(1)(a) is consistent with supreme court precedent. To get to the district court's interpretation, however, we must first look at the Stoeckleins' fifth claim. That claim alleged violation of section 24-

7

32-3316(1), part of the regulatory scheme for the installation of manufactured homes. It states that "any installation [of a manufactured home] must be performed in strict accordance with the applicable manufacturer's installation instructions." *Id.*

¶ 15 The CCPA overlaps with the regulatory scheme for manufactured homes by making "[a]ny intentional violation of the installation provisions of this part 33" a deceptive trade practice subject to enforcement under section 6-1-105(1)(ss), C.R.S. 2024. § 24-32-3319, C.R.S. 2024. The CCPA states that a person engages in a deceptive trade practice if the person, through the person's business, "[v]iolates any provision of part 33 of article 32 of title 24 that applies to the installation of manufactured homes or tiny homes." *Id.* Actions under the CCPA must be brought three years from the date the deceptive trade practice occurred, or when the last act in a series of acts occurred, or when the consumer discovered or should have discovered the occurrence. § 6-1-115, C.R.S. 2024.

¶ 16 In the Stoeckleins' view, they moved into their home in June 2019, immediately discovered defects, and filed their complaint against Fayette Farms in May 2022, and thus they timely brought

their action within the CCPA's three year statute of limitations. And if we were only looking at the CCPA, this may be accurate. But because this is a construction defect case, we must also look to the statute of limitations in section 13-80-104(1)(a) and the allegations raised in the complaint.

Section 13-80-104(1)(a) says,

> *Notwithstanding any statutory provision to the contrary, all actions* against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within the time provided in section 13-80-102 after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than six years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

(Emphasis added.) Section 13-80-102(1)(a), C.R.S. 2024, contains a two year limitations period for all tort actions, including those for negligence. We agree with the district court that the phrase "'[n]otwithstanding any statutory provision to the contrary' is intended 'to exclude — not include — the operation of other statutes.'" *Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶¶ 8,

9

11 (quoting *Theodore Roosevelt Agency, Inc. v. Gen. Motors Acceptance Corp.*, 398 P.2d 965, 966 (Colo. 1965)).  Indeed, "'[t]he word 'Notwithstanding' is one in opposition to, and not one of compatibility with, another statute.'"  *Id.*

¶ 17     *Goodman* is not only instructive on how courts should interpret the word "notwithstanding" in a statute, but it also supports another principle of statutory construction: When the same word or phrase is repeated in the same statutory provision or scheme, unless otherwise indicated by the General Assembly, we must presume the repeated word or phrase has the same meaning throughout.  *People v. Delgado*, 2016 COA 174, ¶ 16, *aff'd*, 2019 CO 82.  *Goodman* interpreted section 13-80-104(1)(b)(II), C.R.S. 2024, which is substantially similar to section 13-80-104(1)(a), the former involving the filing of construction defect claims against other parties "who [are] or may be liable to the claimant for all or part of the claimant's liability to a third person[.]"  As the district court reasoned, and we agree, "the phrase 'notwithstanding any statutory provision to the contrary[]' [in section 13-80-104(1)(a)] plainly and unambiguously precludes the operation of other statutory limitation

10

periods, including the three year limitations period specified in [section] 6-1-115 in the context of construction defect claims."[4]

¶ 18    Second, the Stoeckleins ignore that only an *intentional* violation of the installation provision in section 24-32-3316 is a deceptive trade practice. *See* § 24-32-3319 ("Any intentional violation of the installation provisions of this part 33" is a deceptive trade practice under the CCPA.). But the Stoeckleins' allegations fall short. In their fifth amended complaint, paragraphs 118-121, they allege that Fayette Farms "failed"

- "to properly install the manufactured home pursuant to manufacturer's installation instructions pursuant to C.R.S. § 24-32-3316";

- "to follow manufacturer's instructions insofar as Fayette did fail to place lateral supports in the basement for the structure's floor joists and marriage joint to rest upon when

---

[4] On appeal, the Stoeckleins concede that they misinterpreted the word "notwithstanding" in section 13-80-104(1)(a), C.R.S. 2024. But their continued advancement that the CCPA statute of limitations governs their fifth claim is simply inconsistent with the plain language of section 13-80-104(1)(a).

11

the structure was being installed upon the permanent foundation";

- "to place lateral supports in the basement prior to installing the home upon the permanent foundation" causing "the structure of the home to sag"; and

- "to level and square the home upon the permanent foundation."

The definition of "fail" or "failure" is the "omission of occurrence or performance." Merriam-Webster Dictionary, https://perma.cc/SF3L-W3ZE. The word "omission" means "apathy toward or neglect of duty." Merriam-Webster Dictionary, https://perma.cc/P3KW-Y6JX. The Stoeckleins' allegations that Fayette Farms "failed" to properly install the house asserts, at most, negligent conduct.

¶ 19 Finally, the Stoeckleins' reliance on *D.R. Horton, Inc. v. Travelers Indem. Co. of Am.*, 860 F. Supp. 2d 1246, 1260 (D. Colo. 2012), is misplaced. There, the federal court held that the plaintiff's action was not a construction defect case but instead "based on the Travelers Defendants' alleged breach of their duty to defend [the plaintiff] in the underlying action." *Id.* In other words, CDARA's

statute of limitation did not apply because the action was "an insurance coverage dispute." *Id.* Based on the Stoeckleins' allegations noted above, the district court was correct to conclude that the fifth claim solely concerned the negligent "planning, design, construction, supervision, or inspection" that resulted in "a defect in an improvement to real property." *Two Denver Highlands Ltd. P'ship*, 932 P.2d at 829.

¶ 20 Thus, we conclude that the district court did not err when it determined that both of the Stoeckleins' claims against Fayette Farms are governed by CDARA's two year statute of limitations.

**B. The Stoeckleins' Fifth and Sixth Claims are Time Barred**

¶ 21 The Stoeckleins contend that the court improperly granted summary judgment because there are disputed issues of fact as to when the statute of limitations began to accrue.

¶ 22 With an exception not applicable here, "a claim for relief arises under [the CDARA] at the time the claimant or the claimant's predecessor in interest discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury." § 13-80-104(1)(b)(I), C.R.S. 2024. "Accrual under CDARA,

13

therefore, depends on the discovery of the *manifestation* of the defect and not its cause." *Broomfield Senior Living Owner, LLC v. R.G. Brinkman Co.*, 2017 COA 31, ¶¶ 26, 29 ("The parties agree that the first *manifestation* of a defect was the sewer flies that appeared in the fall of 2012," and so the action was filed timely.).

¶ 23     For example, in *United Fire Group v. Powers Electric, Inc.*, 240 P.3d 569, 571 (Colo. App. 2010), a division of this court interpreted the plain language of section 13-80-104(1)(b)(I), and determined that the phrase "physical manifestation" of a defect meant "of or relating to natural or material things," which would be "perceptible, outward, or [a] visible expression." At issue in that case was whether the two year statute of limitations accrued when the fire to a building occurred or when it was later discovered that the fire was caused by faulty electrical wiring. *Id.* In applying the plain language, the division concluded that "the fire, a natural or material thing, was the perceptible, outward, and visible expression of something else: the defective wiring in the exit sign." *Id.*

¶ 24     Here, the parties and court have different dates of accrual: (1) the Stoeckleins rely on the September 30, 2021 Fronapfel Report; (2) Fayette Farms contends that the statute of limitations began to

14

accrue on June 14, 2019 when the Stoeckleins moved into their home and discovered many defects leading to the Steel Report; and (3) the district court determined that the statute of limitations began to accrue, at the latest, in August 2019 based on portions of homeowner Lindsey's deposition testimony.

¶ 25 We conclude for two reasons that the district court did not err when it determined that there were no genuine issues of material fact in dispute that the two year statute of limitations began to accrue in August 2019, at the latest.

¶ 26 First, the Stoeckleins conflate the discovery by their expert of the *cause* of the defect — Fayette Farms allegedly parking a crane too close to the basement causing structural sagging to the home, among other errors in the installation — with the discovery of the *physical manifestation* of the defect. But as the district court correctly determined, the Stoeckleins had notice by August 2019 that there was something terribly wrong with their home. As it relates to the house sagging or foundational issues, the court relied on four main sources of information to conclude that the Stoeckleins had notice of the physical manifestations of the defect.

¶ 27    The court relied on the June 14, 2019 email the Stoeckleins sent to High Country the day after they moved in identifying many defects and requesting repairs.  Most relevant to the house sagging or the foundational issues, the email identified the following:

- "Wall repairs (cracks in walls) from settling, In all 4 bed rooms and master bathroom closet.  Including the large crack running up and down the wall between bedroom #1 and utility room."

- "Laundry door room is not set correctly and will not stay closed or latch."

¶ 28    Next, the court relied on the June 29, 2019 Steel Report identifying numerous issues with the home and recommending further inspection and repair by qualified professionals.  The Steel Report indicated evidence of "moisture intrusion [which] can result in damage to the home structure or materials from decay or deterioration . . . .  Diligence is needed for any moisture intrusion."  Further, it outlined that the exterior walls had "gaps and moderate warping observed to the siding around the home."

¶ 29    The Steel Report further identified that the front porch roof structure could not be observed and proper attachment to the home

could not be confirmed. Steel Rhino recommended that "access to the front porch roof structure be installed, that the front porch be evaluated by a qualified professional, and that proper construction and attachment to the home be confirmed." As to the structural component, the report noted that several posts were not properly attached to the beam and, again, recommended repairs by a qualified professional. The identified problems were written in red in the Steel Report and as already noted, most, if not all, recommended further "evaluation and repair by a qualified professional."

¶ 30    Based on the Steel Report alone, the district court concluded that the Stoeckleins "were aware of issues with water intrusion, the home's roof and floor, and the structural integrity of the home's exterior as of June 29, 2019, all of which are physical manifestations of the construction defects that Fayette allegedly caused." The court's conclusion is bolstered by Chance agreeing that he and his wife had hired Steel Rhino to identify *all* issues with their home.

¶ 31    The court also relied on the July 25, 2019 notice of claim required by CDARA that the Stoeckleins' legal counsel sent to High

17

Country identifying the various defects, including "issues with wall cracking, the roof, several of the home's doors, the home's flooring, air and water leaking into the home, and the home's foundation."

¶ 32　Finally, the court relied on Lindsey's deposition testimony in which she "observed foundation issues and cracking within a couple weeks of moving into the home" and she "observed issues with the floors, stairs, and ceiling in June 2019. She also "had to supplement the heat in the home with electric heaters in the summer of 2019 due to issues with their home, and observed water leaking from where their home 'tied in the porch' into August 2019." We also note that Lindsey conceded knowing about the foundation cracks from the Steel Report, stating, "We had foundation issues. We had — from cracking. We had — we couldn't close doors."

¶ 33　We acknowledge that none of the highlighted problems or recommended repairs identified the *cause* of the defect. This is why the Stoeckleins rely on *Stiff v. Bilden Homes, Inc.*, 88 P.3d 639 (Colo. App. 2003). In that case, a division of this court held that summary judgment was improperly granted because the plaintiff's claims were not barred by the statute of limitations. There, the builder installed "slab-on-grade flooring," which would

accommodate a certain amount of movement. *Id.* The division said that "not all damage is sufficient to begin the limitations period." Under the facts of that case, though, "damage would arise to permit a successful cause of action only when the movement of the slab-on-grade flooring became excessive and the accommodations were no longer sufficient to control the damage." *Id.*

¶ 34 But the Steel Report identifies numerous defects and none of them included qualifiers that the damage or issue was anticipated, accounted for in the building of the home, or was not considered excessive. Indeed, by the Steel Report recommending further evaluation by qualified experts and that repairs be done, this case is inapposite of *Stiff*. And *United Fire Group*, 240 P.3d at 572, distinguished *Stiff* as we do here, reasoning that the case had "no discussion of whether it was also necessary for the cause of that damage to be known in order to begin the limitations period." For this reason, *United Fire Group* considered "as dictum *Stiff*'s reference to learning the cause of the damage as being necessary to activate the statute of limitations." *Id.*

¶ 35 Second, we disagree with the Stoeckleins that the district court did not give them the benefit of all favorable inferences or

19

resolve all doubts in their favor. They rely on their affidavit and Fronapfel's affidavit, contending that these statements created genuine issues of material fact. Specifically, the Stoeckleins averred the following:

- It was wet and snowy on the day Fayette Farms installed the home, and it parked the crane too close to the basement wall.

- The weight of the crane "on the wet ground as it picked up the sections of [the] home caused the basement walls to bow and crack."

- Fayette Farms did not place the lateral supports in the basement "at the marriage line of the two sections of [the] home together," and this "caused the entire house to sag."

- Fayette Farms did not install the home from front to back "resulting in an overlap of the home on the front of the basement walls," and this defect "was not visible because it was covered by fill dirt and a garage."

- Fayette Farms did not "level or square the home upon the permanent foundation."

Fronapfel averred that, "[w]hile Plaintiffs may have been able to see some resultant damages when they initially moved into their home,

20

the major structural damages caused by Fayette's defective installation of Plaintiffs' home were imperceptible without special knowledge and an understanding of structural engineering." Fronapfel continued that "[i]t would be unreasonable to expect an average homeowner to have been able to detect or mentally understand the implications of the initial damages, the issues associated with the incomplete structural paths, and the issues associated with the damages on long term performance of the foundation structures."

¶ 36    We sympathize with the Stoeckleins that some of the physical manifestations did not directly or indirectly identify that the structure had not been installed properly leading to the home's defects.  But the water intrusion, doors and windows not latching, cracks in the walls and warping, and roof issues — just to name a few — were "natural or material thing[s]" and were "the perceptible, outward, and visible expression" of the installation defect, while Fayette Farms' alleged negligent actions were the cause.  *See United Fire Grp.*, 240 P.3d at 571.  While the Stoeckleins averred that they thought Steel Rhino were experts, the district court reasoned, and we agree, that nothing in their affidavit put forth facts that they

were prevented from seeking out additional professional evaluation and repairs as recommended by the Steel Report.

¶ 37 Therefore, we conclude the district court properly granted summary judgment in favor of Fayette Farms because the Stoeckleins' fifth and sixth claims were time barred.

## IV. Conclusion

¶ 38 The judgment is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.